234 SUPREME COURT OF LOUISIANA.

Landreaux et al. vs. Louque.

## No. 10,768.

### PEDRO LANDREAUX ET AL. VS. NORBERT LOUQUE.

1. The interest of a deceased wife's heirs in community property is only residuary, and their inheritance is subordinated to the payment of the debts of the community.

2. A surviving husband is personally and individually responsible for the payment of the debts of the community, while the wife is only contingently liable therefor; and the latter may relieve herself by making a renunciation of her interest in the community property, and after her death her heirs may relieve themselves either by renouncing her succession or accepting it with the benefit of an inventory.

3. In case the claim of a community creditor is secured by a special mortgage, which is evidenced by an authentic act, importing a confession of judgment, and containing the non-alienation clause, he may foreclose the property mortgaged in executory proceedings taken against the surviving husband alone, and a judicial sale thereunder will convey a valid title to a purchaser.

APPEAL from the Twenty-sixth District Court for the Parish of St. Charles. *Rost, J.*

*Chas. F. Claiborne*, for Plaintiffs and Appellees, cited: 17 La. 238; 24 An. 530; 36 An. 157; 33 An. 467; 35 An. 297; 38 An. 759; 42 An. 411; 42 An. 432.

*Chas. Louque*, for Defendant and Appellant, cited: 38 An. 584; 32 An. 898; 5 An. 737; 15 An. 636.

The opinion of the court was delivered by

WATKINS, J. Plaintiffs commenced executory proceedings in the foreclosure of a mortgage on property of the late matrimonial community of Norbert Louque and wife by citation to the surviving husband *alone;* and the beneficiary heirs of the deceased wife filed a third opposition to the sale on the ground that the community was dissolved by the death of their mother; that their father from that moment ceased to be head and master of the community; that as legal heirs of their mother, all of her rights and obligations passed to them as an inheritance, and therefore no valid sale could be made of the one-half interest in the property mortgaged, which was owned by their mother and inherited by them, unless they were duly notified thereof.

The plaintiffs in execution concede the claim made by the opponents as a general proposition, but allege that although the legal community be dissolved by the demise of one of the spouses as matter of fact, yet it has subsequently a fictitious existence for the purpose of liquidating and discharging community debts, and that the right of possession by the heirs is held in suspense so long as there are community debts remaining unpaid.

In this case they allege that the heirs of Mrs. Louque are without interest to make complaint of their proceedings, because the Louque community is insolvent, and no *residuum* will remain after its debts are paid.

On the trial judgment was rendered in favor of the plaintiffs in execution, rejecting the demands of the opponents, and they have appealed.

The record discloses the following facts, viz:

That plaintiffs sold the property in controversy to Norbert Louque in December, 1877, for $32,000, of which $4500 was paid in cash, and for the balance of the price said vendee executed his several notes, payable at future dates with interest.

That in order to secure same, a special mortgage and vendor's lien were stipulated in the public act of conveyance, and also the pact *de non alienando*. Some of the notes first maturing were paid, and the remainder were subsequently acknowledged, and the time of their payment extended. In June, 1886, Mrs. Odile Louque died, leaving as her surviving heirs the opponents, who accepted her succession with the benefit of inventory, and another son who renounced her succession. Notice of the order of seizure and sale was given to Norbert Louque, surviving husband, *alone*. The sale having been opposed without resorting to an injunction, the property was adjudicated to the seizing creditors for the sum of $20,000, same being more than two-thirds of the appraisement, and less than half of the debt and interest due. It is a fact admitted in this court that the property in question constituted the *sole* asset of the legal community.

Under this state of facts, the question for decision is whether the opponents were entitled to notification of the executory proceedings, and could a valid sale of their one-half undivided interest in the common property be made without it.

It is elementary that the interest of the wife's heirs in the community is only a residuary one, and their inheritance is subordinated to the payment of community debts. Succession of Dumestre, 49 An. 411; Factors and Traders Insurance Co. vs. Levi, 42 An. 432; 33 An. 467, 585; 35 An. 297; 36 An. 157; 38 An. 759; Hen. Dig., p. 1496; Louque's Dig., p. 416.

In addition to the fact that the heirs can not take possession of the undivided interest in the community property, which they have inherited from the deceased wife, until community debts are paid, is the binding force of the authentic mortgage, which imports a confession of judgment, and contains the clause of non-alienation, one of the effects of which is to entitle the mortgage creditor to proceed in the foreclosure of the property mortgaged, on giving notice to the *original* debtor, and without paying any attention to any *transferee* of same.

It is settled that executory proceedings against a deceased mortgagor can be taken on giving notice to the administrator of his estate alone, and the surviving husband is personally and individually responsible for the payment of community debts, whether they are ordinary or secured by mortgage, while the heirs of the wife are only contingently liable, and may relieve themselves from personal responsibility by renouncing her succession, or accepting it with the benefit of inventory—as Mrs. Odile Louque's heirs have done.

It is not easily perceived what reason there can be, under the circumstances of this case, for making the *beneficiary* heirs of the deceased member of the *insolvent* community parties to the executory proceedings, which were taken against the surviving husband alone.

It is the accepted jurisprudence of this court that such proceedings can be conducted against the surviving husband alone. This principle has been decided specifically in several cases. For instance, it was said by our early predecessors, in Lawson vs. Ripley, 17 La. 238, that, after dissolution of a community "by the death of the husband, it is uniformly understood that his estate is bound to pay the debts contracted during the marriage; if it be dissolved by the death of the wife, the *survivor is generally alone applied to* for the satisfaction of the community debts; and the wife or her representatives, although their distinct interest to the community attaches at the dissolution of the marriage, subject to their right to renounce and be exonerated from the payment of the community debts, have

nothing to claim out of the acquets and gains until such debts are paid or liquidated."

This opinion was followed by and quoted as authority for many subsequent cases, and notably in Baird vs. Lemee, 23 An. 424.

In Hawley, Administrator, vs. Crescent City Bank, 26 An. 230, the court expressed its unqualified approval of this doctrine, and said: .

" Upon the dissolution of the community by the death of the wife, the responsibility of the husband in regard to the community debts is not changed. He is absolutely and personally bound for their payment, and his separate property may be seized and sold for their acquittal. This being his position, he has under his control the community property, which by law is expressly subjected to the payment of the community debts; and he has, so far as the final settlement and liquidation of the community after its dissolution is concerned, the same rights he had during its existence, because he is, after the dissolution, under the *same responsibilities* for the community debts that he was before the dissolution. It is but just that he should have those powers. The community property continues under his control until the debts are paid. Until their final settlement and discharge the heirs have no absolute rights to the property of the community that can be legally recognized. Their interest in it continues contingent and uncertain until, by the result of the final discharge of all the obligations of the community, it is known whether there are assets remaining for partition between the survivor and the heirs of the deceased spouse."

The individual liability of the husband for community debts after the death of the wife was recognized and enforced in Bienvenue vs. Fournet, 28 An. 623; also in 26 An. 290.

The doctrine announced in the quoted cases was in substance re-announced by this court with approval in Succession of Cason, 32 An. 792, and the court added:

" If, as in this case, the community be admittedly insolvent," the heirs of the deceased wife "have no interest, and consequently no right, to provoke its liquidation. As to the community creditors, they are under no necessity to provoke its liquidation through the medium of the wife's succession, because it is settled they may *disregard the wife's interest* and proceed directly against the community property in possession of the husband *contradictorily with him alone.* 26 An. 230, 391, 294."

The question presently under consideration was raised and de-cided in Killelea vs. Barrett, 37 An. 865. In that case suit was brought by the heirs of a deceased wife for the revocation of a judicial sale of community real estate, which had been made in executory pro-ceedings against their surviving father alone, and not against them nor against their mother's succession.

We said that it was unnecessary that the deceased wife's succes-sion or heirs should have been made parties thereto. " As before stated, the debt was a community debt, to enforce which the pro-ceeding was instituted. The sole debtor was Killelea, the husband, and the community property was subject to the debt, and it was sufficient to make the debtor, if alive, or his legal representatives, if dead, parties to a proceeding to coerce its payment. This is settled by the latest authorities, which we follow. 26 An. 230."

Oriol, Tutor, vs. Herndon, 38 An. 759, was a similar case, and we maintained the same principle and cited as authority therefor, Durham vs. Williams, 32 An. 162; Succession of Cason, 32 An. 792; Succession of Boyer, 36 An. 515; Killelea vs. Barrett, 37 An. 865; Succession of Bright, 38 An. 141; Succession of McLean, 42 An. 222.

Our opinion in Succession of Lomm, 40 An. 312, is predicated on this line of authority. From these numerous adjudications it ap-pears that this court stands thoroughly committed to the doctrine of Lawson vs. Ripley and Succession of McLean. Indeed this con-struction of the community law has ripened into a rule of property, and should not be changed, except for the weightiest and most serious considerations. And surely none have been suggested in this case.

But it is intimated that this line of authority is antagonized by our opinions in Tugwell vs. Tugwell, 32 An. 848, and Glasscock vs. Clark, 33 An. 584.

In these opinions we held that the judgment of the lower court erroneously rejected the demands of the plaintiffs therein, on the ground that heirs of a deceased wife and partner in community disclosed in themselves no cause of action for the recovery of her undivided interest in the property of the community until it was shown that the affairs of the community had been liquidated and settled. While we maintained the right of the plaintiffs in those cases to sue and stand in judgment, we distinctly placed it upon the

ground that there was a specific averment in their petitions that the communities respectively owed no debts. And in Tugwell vs. Tugwell, we distinctly held "that when the community acquets and gains is dissolved by the death of the wife, the respective interests of the wife attach at the moment of its. dissolution, to the property of the community, *subject to the payment of community debts.*" [Italics ours.]

The enunciation of this doctrine would be plainly inconsistent with the maintenance of plaintiff's cause of action in that case, except upon the theory that all community debts had been paid, or that plaintiff's *petitory* action for the recovery of their mother's interest in the community property, though charged with debts of the community, was a *simple* acceptance of her succession, and rendered them *personally* responsible therefor to the extent of their shares thereof.

It will be observed further that there is a clear distinction between those two cases and those we have herein previously cited. The latter appertain to the right of community creditors to proceed against the surviving husband alone, in the collection of their claims against it, and sanction the validity of *judicial* sales made in pursuance thereof. The former relate to the illegality of *private* sales of community property, made by surviving husbands after the demise of their wives, and for *other* consideration than satisfaction of the debts of the community.

Those cases are predicated upon Burnett vs. Fuller, 29 An. 663, in which it was held that "after the dissolution of the community, the husband, as its former head, has no power to sell, and can convey title to no greater part of the community property than his undivided interest."

Conceding the full force and correctness of those opinions, and this we do unreservedly, and, in our opinion, nothing is gained by the opponents. For, notwithstanding the legal inhibition which is placed upon the surviving husband, and which prevents his making a divestiture of the title of his deceased wife in the community property, to the prejudice of his *simple* heirs, it is a *non sequiter* that same may not be done, legally and effectually, by means of executory or probate proceedings and *judicial* sale, taken and made contradictorily with the surviving husband alone.

Judgment affirmed.