PROVOSTY, J.
Plaintiffs sue to annul an election held for voting a school tax. They contend that the proceedings were irregular, and, in the alternative, that a majority of *337 the legal property votes were against the tax. They are appellants. No brief has been filed by the .defendant school board, appellee.
[1] Only one irregularity is alleged,- namely, that the ballot used at the election did not correspond with the resolution ordering the election; that, whereas the resolution declared that the tax was to be levied “for the purpose of giving additional aid tb the public schools of said district, or to erect, equip, and repair public school buildings in said, district” (in other words, contained two propositions), the ballot read that the tax was voted “for- the purpose of giving additional aid to the public schools of the district” (contained only one proposition).
Section 8 of the statute under which the’ election was held (Act 256, p. 429, of 1910)-provides that:
“The ballot shall be in the. following form: !
“For the Levying of a Tax.

In the same resolution calling the election the school board proceeded to prescribe what should be the form of the ballot, or, in other words, proceeded to fill in those of the banks in this statutory form which have to be filled in by the authority calling the election, and they filled in the bank left for the insertion of the purpose of the tax in the manner just stated. Unless, therefore, they did not understand their own resolution, they filled this blank properly. In other words, they understood their resolution as containing but one proposition, and that proposition to be the one-expi'essed in the ballot. And the said resolution is easily susceptible of that interpretation. While the expression, “For the purpose of giving additional aid to the public schools, or to erect, etc., school buildings,” might appear to contain two propositions, one “to aid the public schools,” and the other “to erect, etc., school buildings,” it is easily susceptible of the interpretation of containing only the one proposition of aiding the public school — the other apparent proposition being nothing more than an explanation, or development of the first. The conjunction “or” has not always an alternative-meaning. It is not always synonymous with “or else,” but often has an explanatory meaning, synonymous with the phrases “in other words” or “that is to say”; and it has the latter meaning in the said resolution, which must therefore be understood as if it read, “in aid of the public schools, or, in other words, to erect, etc., school buildings.” So reading -the resolution, it has not ideal precision, but is sufficiently definite, we think, to serve the purpose.
[2] In regard to the legality of the votes, it is contended by plaintiff that the property qualification of the voters is to be determined solely and exclusively by the assessment roll. With that contention the writer of this opinion is in full accord, deeming it to be clear that the said Act 256, in its sections 4 and 6 so requires, and that the requirement is constitutional, since the constitutional requirement (article 281) that .the voter be a property tax payer is easily susceptible of the interpretation that he must be so according to some method to be adopted by the Legislature for determining whether he is so or not. In other words, that the Constitution does not contemplate that the qualification of the voters shall be determined at the polls by the commissioners, or after-wards by the courts, but antecedently by some means or method provided to that end by the Legislature — this means being the assessment roll. That whoever is shown by the assessmént roll to be a taxpayer is a taxpayer within the intendment of the 'Constitu *339 tion, subject only to such correction of the ■assessment as may be rendered necessary by •changes in ownership that have taken place since the assessment was made. That this antecedent ascertainment of the qualification of the voters is necessary in the interest of orderly government, and to avoid converting •every election of this kind at which there is opposition into a vast lawsuit involving multitudinous petitory actions for testing the title of the voters to the property for which they are assessed. That if the assessment can serve for fixing the value of the property, as admittedly it can, it can serve also for fixing the ownership. But the majority of the ■court think otherwise, being of opinion that by the term “property tax payer,” the Constitution means a person who is such at the moment he or she offers to vote, and is such not ostensibly merely or, in other words, according to the assessment roll, but in reality; that in the intendment of the Constitution those only shall vote who are to pay the tax, who would be voting the tax upon themselves, and not upon others; those only who are really owners of the property at the time it is voted.
According to the latter view, the vote of Mrs. A. D. Peniston, who was assessed with property belonging to the estate of her deceased husband, to which her children were heirs and in which she herself had no proprietary interest, was properly rejected.
By a mere clerical error, the reduction made by the lower court in the vote of J. H. Knight against the tax was too great by $100. This we shall correct.
[3, 4] The vote of Goodrun Davis against the tax was reduced by $360, the ¿ssessed value of a tract of land acquired by his deceased wife during the marriage. The act •of sale does not show that the purchase was made with the separate or paraphernal funds •of the wife, and nothing in the record takes the-property from under the legal presumption that property acquired by either spouse during the marriage is community. Differently from the wife, whose interest in the community property is residuary, the husband, as head and master of the community, owns its property during its existence, with full power of alienation, and after its dissolution by the death of the wife continues to own one-half with full power of alienation. Landreaux v. Louque, 43 La. Ann. 234, 9 South. 32. But at the death of the wife a one-half interest in the community property vests at once in her heirs (Bossier v. Herwig, 112 La. 539, 36 "South. 557), and this half interest the surviving husband cannot by his own act either alienate or incumber. He is not qualified therefore to vote a tax upon it. The vote should therefore have been rejected for one-half of the $360.
[5] The proxy of Mrs. C. A. Ballard in casting her vote against the tax attached to the ballot his power of attorney to vote the entire assessment, but failed to fill in the blank left in the ballot for the insertion of the “Taxable Valuation” for which the vote was cast. It is argued that under these circumstances the amount intended to be voted is not left to conjecture, and that, therefore, the ballot is good for the entire amount of the assessment. We do not agree with that view. The requirement of the statute is that the amount voted shall be fixed to a certainty, whereas there is here nothing more than an inference.
[6] T. J. Ohisum voted a land assessment of 3,150 acres valued in globo at $12,000. Included in this 3,150 acres were the Swayze place containing 301 acres, and the S. % of section 16, township 11, range 8, whose acreage is not fixed in the record. The learned trial judge found the average assessment per acre by dividing the valuation by the acreage, and made the deduction for the 301 acres of the Swayze place. Plaintiffs contend that 320 acres should be deducted for the S. % *341 of section 16, and that the valuation of the Swayze place should be fixed not by average method, but by the actual valuation placed upon the property in the assessment roll; •and they seek to arrive at this assessment valuation by introducing in evidence certain deeds showing that certain lands were sold and resold in years past, and introducing also the assessment rolls of those years showing what the valuation of the lanfis mentioned in ¡said deeds was in those years, and by the' testimony of the assessor to the effect that in making the assessment of 1913, which served as the basis for the election, he adopted for the Swayze place the valuation of those years.. There béing nothing in the record to identify the lands thus sold and appraised in former years with the Swayze place, the best that-can be done is to adopt the average method.
[7] Mrs. Laura R. Enwright, as usufructuary of the property belonging to the community of acqugts and gains at one time existing between her and her deceased husband, $1,-'780, was entitled to vote same. Her vote .against the tax should therefore have been counted. Endom v. City of Monroe, 112 La. 779, 36 South. 681. In her own right as owner of one-half she was entitled to vote one-half of this asséssment. It was assessed to her, and for 14 years she had been in possession of it, and nothing showed that the community owed any debts. While the title of the surviving widow in community to the community property in residuary, it is none the less a vested title. Bossier v. Herwig, 112 La. 539, 36 South. 557. She is none the less owner. Eor impugning her ownership the existence of debts would have to be shown, and no proof of that kind is made in this cage.
The learned trial judge found a majority of $508 in favor of the tax. This result he reached after having rejected the votes against the tax which are held hereinabove to have been valid. Counting these votes, as must be done, the tax was defeated.
Out of 78 votes cast at this election 24 were contested, necessitating an investigation of the land titles of the voters, and, incidentally, examination and study of succession settlements, community of acqugts and gains settlements, and- tutorship settlements. Fortunately for this court the number of contests was reduced by the sifting process through which they passed in the lower court to the comparatively few hereinabove considered. Would that the Constitution could be so amended as to preserve the courts from the burden of these tax election cases by letting the registration and assessment rolls be, in the absence of fraud, the sole and final tests of the qualifications of the voter; and would that political election cases could be relegated to some other more appropriate tribunal!
The judgment appealed from is set aside, and it is now ordered, adjudged, and decreed that the election held in School District No. 2 of the parish of Catahoula for voting a tax of eight mills on the dollar in aid of •the public schools of that district; on August 11, 1914, be held to have been null and void and be annulled and avoided, and that the writ of injunction issued herein against the sheriff and ex officio tax collector of said parish be and is hereby reinstated and perpetuated, and that defendant pay the costs of this suit.