## BLUM et al. v. WARDELL, Collector of Internal Revenue.

(District Court, N. D. California, S. D.  December 30, 1920.)

No. 16311.

1. **Courts ⬤⟹366(16)—State decisions as to nature of community property binding in applying federal inheritance tax.**

   The federal courts in applying the federal inheritance tax levied by Act Sept. 8, 1916, §§ 201–203 (Comp. St. §§ 6336½b–6336½d) on the transfer of the net estate of a decedent are bound by the decisions of the state court construing the statutes of the state relating to community property as giving the wife her share of the community property on death of her husband by way of inheritance.

2. **Internal revenue ⬤⟹8—Wife's share of community property is not taxable as transfer.**

   Under the modifications of the original Community Property Law of California, culminating in the re-enactment in 1917 of Civ. Code Cal. §§ 172, 172a, whereby the husband was no longer given the absolute power of disposition over such property, and under St. 1917, p. 880, providing that the share of the surviving widow in the community property shall not be subject to the state inheritance tax, the surviving widow no longer takes her interest in the community property as heir as she formerly did, and such interest is not subject to the federal inheritance tax imposed on the transfer of a decedent's estate by Act Sept. 8, 1916, §§ 201–203 (Comp. St. §§ 6336½b–6336½d), especially since in no other state is the widow's share in community property a taxable transfer.

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by James B. Blum and another, as executors of the last will and testament of Rosa Blum, deceased, against Justus S. Wardell, Collector of Internal Revenue for the First District of California. On demurrer to the complaint. Demurrer overruled.

Goldman & Altman, Thomas P. Boyd, of San Rafael, Cal., John W. Preston, of San Francisco, Cal., and H. W. B. Taylor, of San Anselmo, Cal., for plaintiffs.

Annette Abbott Adams, U. S. Atty., and Charles W. Thomas, Jr., Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

Robbins, Elkins & Van Fleet, of San Francisco, Cal., amici curiæ.

RUDKIN, District Judge. Section 201 of the Act of September 8, 1916 (39 Stat. 777 [Comp. St. § 6336½b]), imposes a tax upon the transfer of the net estate of every decedent dying after the passage of the act, whether a resident or nonresident of the United States.

Section 202 (Comp. St. § 6336½c) provides that the value of the gross estate shall be determined by including the value, at the time of his death, of all property, real or personal, tangible or intangible, wherever situated, to the extent of the interest therein of the decedent at the time of his death, which after his death is subject to the payment of the charges against his estate and the expenses of administration, and is subject to distribution as a part of his estate, and to the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person.

Section 203 (Comp. St. § 6336½d) provides that the value of the net estate shall be determined by deducting from the value of the gross estate funeral expenses, administration expenses, claims against the estate, unpaid mortgages, losses incurred during the settlement of the estate, arising from fires, storms, shipwreck, or other casualty, and from theft, where such losses are not compensated for by insurance or otherwise, support during the settlement of the estate of those dependent upon the decedent, and such other charges against the estate as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is administered, and an exemption of $50,000.

Moses Blum, a resident of the city and county of San Francisco, died testate on the 22d day of June, 1918, and after his death the executors of his last will and testament paid under protest an estate tax on the sum of $116,663.38, which was the value of the half interest in the community personal property which passed to the surviving widow under the laws of the state upon the death of the husband. The present action was thereafter instituted against the collector of internal revenue to recover the tax thus paid.

The foregoing statement is deemed sufficient to a proper understanding of the questions presented by the demurrer to the amended complaint.

The defendant contends that the decedent was the owner of the entire community personal estate at the time of his death; that the interest of the wife was a mere expectancy, like the interest of an heir in the property of his ancestor, and possessed none of the attributes of an

estate, either at law or in equity. The plaintiffs, on the other hand, while conceding that such was the rule of decision in the state at one period, contend that such was not the law or rule of decision at the date of the marriage of the decedent in 1885; that such is not now the law of the state; and that in any event a federal court sitting in California will place its own construction upon the community property laws of the state and on the federal act imposing the tax in question.

That the Supreme Court of California has repeatedly construed the community property laws of the state, as claimed by the defendant, does not admit of question. Reference to a single decision will demonstrate this. In re Moffitt's Estate, 153 Cal. 359, 95 Pac. 653, 1025, 20 L. R. A. (N. S.) 207, decided in 1908. The court there held that the share of the surviving wife in the community property was subject to the inheritance tax imposed by the laws of the state, and in discussing the nature of her interest in the community property said:

"It is conceded that the determination of the trial court that such property is liable for the payment of this tax finds support in the cases of In re Burdick, 112 Cal. 387, 44 Pac. 734, Spreckels v. Spreckels, 116 Cal. 339, 48 Pac. 228, 36 L. R. A. 497, 58 Am. St. Rep. 170, and Sharp v. Loupe, 120 Cal. 89, 52 Pac. 134, 586. But it is earnestly contended that this court should overrule these cases to the extent of holding that, as to the community property, the widow has such an ownership or estate or title as enables her to take upon the death of the husband, not as his heir, and not by succession, but by a certain right of survivorship; that, in effect, the wife during the existence of the marriage status has always enjoyed an ownership in one-half of the community property; and that by the death of the husband her ownership of this moiety is simply released from the power of disposition over it, with which the law during his lifetime and during the existence of the marriage status has clothed him. Reference is made to the language of the Civil Code (section 682), which declares that ownership of property by several persons is either (1) of joint interest; (2) of partnership interest; (3) of interests in common; (4) community interest of husband and wife. We are referred also to expressions in some of the earlier decisions of this court, such as the language of Beard v. Knox, 5 Cal. 256, 63 Am. Dec. 125, where it is said: 'The husband and wife during coverture are jointly seized of the property, with a half interest remaining over to the wife, subject only to the husband's disposal during their joint lives. This is a present, definite, and certain interest, which becomes absolute at his death.' All of these Code sections, all of these cases, and all of these arguments were most ably urged upon the attention of the court in the first two cases above cited, and the conclusion then reached was there expressed in the following language: 'Courts and counsel have occasionally endeavored to find some property right in the wife or some respect in which the husband's interest falls short of full property. I think it will be universally admitted that so far there had been a complete failure in this respect. The first attempt shown by our reports of that kind is in De Godey v. De Godey, 39 Cal. 157. In that case it is said that, while no other technical term so well defines the wife's interest as the phrase "a mere expectancy, * * * it is at the same time * * * so vested in her that the husband cannot deprive her of it by his will, nor voluntarily alienate it for the mere purpose of divesting her of her claim to it."' After painstaking investigation and review, and after the fullest deliberation, this court, in Re Burdick, determined and held, as it declared in Spreckels v. Spreckels, that upon the death of the husband the wife takes one-half of the community property as heir. Every argument here advanced against that conclusion was urged by learned counsel in the other cases, and was fully met in the opinions above referred to. No useful purpose can be subserved by a repetition of these arguments or of the answers to them. A reading of the opinions

of this court in those cases will establish how thoroughly the questions were entered into, and what a complete disposition was made of them."

The opinion on rehearing in the same case (153 Cal. 359, 95 Pac. 1025, 20 L. R. A. [N. S.] 207) disposes of the further contention that there was no such rule of decision at the date of the marriage of the decedent in 1885. It was there urged that the property upon which the tax was imposed was acquired under the Constitution of 1849 (article 11, § 14), which declared:

"Laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property, as to that held in common with her husband"

—and that neither the new Constitution of 1879 nor the laws enacted thereunder could deprive the wife of her interest in the community property thus guaranteed and secured by the former Constitution. But the court, after a full review of the earlier decisions, held that the community property laws of the state had always received the same construction at the hands of the court, quoting the language of Chief Justice Field in Van Maren v. Johnson, 15 Cal. 303, of Justice Cope in Packard v. Arellanes, 17 Cal. 525, and of Justice Thornton in Greiner v. Greiner, 58 Cal. 119. A similar conclusion was reached in Spreckels v. Spreckels, 116 Cal. 339, 48 Pac. 228, 36 L. R. A. 497, 58 Am. St. Rep. 170. In the late case of Spreckels v. Spreckels, 172 Cal. 775, 158 Pac. 537, decided in 1916, the court said:

"Under the statute prior to the addition of the first proviso in 1891, it was the established doctrine in this state that during the marriage the husband was the sole and exclusive owner of all of the community property, and the wife had no title thereto, nor interest or estate therein, other than a mere expectancy as heir, if she survived him."

And in construing the proviso of that year the court further said:

"Neither does the proviso purport to vest in the wife, during the marriage, any present interest or estate in the community property given away by the husband without her written consent. In view of the long-settled doctrine that the entire estate therein is in the husband during the marriage relation, a doctrine that had become a fixed and well-understood rule of property, it is not to be supposed that the Legislature would have made a change of so radical a character without plain language to that effect. We do not find in the proviso such language, nor anything that can reasonably be so construed. If it confers upon her, during the marriage, any right respecting such gifts, it is nothing more than a right to revoke the gift and, if necessary, sue to recover the property, not as her separate estate, but to reinstate it as a part of the community property, with the title vested in the husband and subject to sale by him, as before."

From these decisions it becomes at once apparent that, prior to the enactment of the legislation upon which the plaintiffs rely, the wife had no estate, legal or equitable, in the community property during the life of the husband, that her interest was a mere expectancy, and that she took as heir to her husband, and not otherwise.

The plaintiffs earnestly insist that many decisions of the Supreme Court of California, both early and late, are entirely inconsistent with the view that the interest of the wife in community property is a mere expectancy, like the interest of an heir in the property of his ancestor.

This much, I think, must be conceded. As said by the Supreme Court of the United States in Arnett v. Reade, 220 U. S. 311, 320, 31 Sup. Ct. 425, 426 (55 L. Ed. 477, 36 L. R. A. [N. S.] 1040):

"However this may be, it is very plain that the wife has a greater interest than the mere possibility of an expectant heir. For it is conceded by the court below, and everywhere, we believe, that in one way or another she has a remedy for an alienation made in fraud of her by her husband."

The same concession has repeatedly been made by the Supreme Court of California, but any attempt to review the many more or less conflicting community property decisions of that court, extending over a period of 70 years, would be futile.

[1] The plaintiffs further contend that this court is not bound by the construction placed upon the laws of California by the highest court of the state. With this contention I am unable to agree. The federal tax is imposed on the transfer of the net estate, and whether there is a transfer upon the death of the husband depends upon the statutes and rule of decision in the state where the parties reside and the property is situate. De Vaughn v. Hutchinson, 165 U. S. 566, 570, 17 Sup. Ct. 461, 41 L. Ed. 827; Randolph v. Craig (D. C.) 267 Fed. 993.

This brings us to a consideration of the more recent legislation upon which the plaintiffs base in part their right of recovery. The first community property law of 1850 (p. 254) provided as follows:

"The husband shall have the entire management and control of the common property, with the like absolute power of disposition as of his own separate estate."

But, notwithstanding this broad language, the courts uniformly held that the husband could not dispose of the entire community property by will, or deprive the wife of one-half thereof upon his death in case she survived him. This limitation on the authority of the husband was embodied in the Civil Code in 1872, the provision reading as follows:

"The husband has the management and control of the community property with the like absolute power of disposition (other than testamentary) as he has of his separate estate."

The next change was in 1891, when the following proviso was added:

"Provided, however, that he cannot make a gift of such community property or convey the same without a valuable consideration, unless the wife, in writing, consents thereto."

In 1901 a second proviso was added, as follows:

"And provided, also, that no sale, conveyance, or incumbrance of the furniture, furnishings and fittings of the home, or of the clothing and wearing apparel of the wife or minor children, which is community property, shall be made without the consent of the wife."

The next change was in 1917, where a distinction is made between real and personal property. Sections 172 and 172a, re-enacted in that year, read as follows:

"Sec. 172. The husband has the management and control of the community personal property, with like absolute power of disposition, other than testamentary, as he has of his separate estate: Provided, however, that he cannot make a gift of such community personal property, or dispose of the same

without a valuable consideration, or sell, convey, or incumber the furniture, furnishing, or fittings of the home or of the clothing or wearing apparel of the wife or minor children that is community, without the written consent of the wife.

"Sec. 172a. The husband has the management and control of community real property but the wife must join with him in executing any instrument by which such community real property, or any interest therein, is leased for a longer period than one year, or is sold, conveyed, or incumbered: Provided, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser or incumbrancer, in good faith without knowledge of the marriage relation shall be presumed to be valid; but no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate."

Another act passed during 1917 (St. 1917, p. 880) provides that, for the purpose of the inheritance tax law of the state, the half of the community property which goes to the surviving widow on the death of the husband shall not be deemed to pass to her as heir of her husband, but shall, for the purpose of the act, be deemed to go, pass, or be transferred to her for a valuable and adequate consideration, and her half of the community property shall not be subject to the inheritance tax.

[2] The plaintiffs contend that this legislation necessarily changes the rule of decision in the state of California, assuming that a fixed or established rule can be gathered from the decided cases. This contention must be upheld. The amendment to the inheritance tax law of the state is a legislative disapproval of the decision in the Moffitt Case. The community property act of 1917 is valid as to community property acquired before its passage (Arnett v. Reade, supra), and if that act does not recognize in the wife a valid, subsisting, vested interest and estate in the community property during the life of the husband, language is without meaning and legislation without avail. When the husband had the management and control of the community property, with the like absolute power of disposition as of his own separate estate, a decision that the wife had a mere expectancy was plausible, if unsound. But under these recent acts such a decision would be without excuse or justification. It is needless to incumber the record with citations from the Supreme Court of the United States and other community property states to demonstrate this. Nor have I overlooked the fact that there has been no change in the community property laws so far as concerns personal property. In all the community property states, from the necessity of the case, the agency of the husband as head of the family is much broader, and his control and dominion over personal property much greater, than in the case of real property; but it has never been supposed, that this difference lessens the estate of the wife in community personal property, or calls for a different rule of succession.

The claim of the government is inequitable at best. It is conceded that the interest of the surviving wife in community property in other community property states is exempt from the estate tax under identical laws, and nothing short of some imperative controlling necessity would justify a court in upholding the tax in a single state. I find no such ob-

stacle in the way of administering equal and impartial justice in this case, and the demurrer is overruled.

Let an order be entered accordingly.