[S. F. No. 9651. In Bank.—August 17, 1923.]

ELIZABETH V. ROBERTS, Respondent, v. J. F. WEH-
MEYER, Appellant.

**[1]** HUSBAND AND WIFE—ADOPTION OF SECTION 172A, CIVIL CODE—
CONVERSION OF COMMUNITY PROPERTY FROM PERSONALTY INTO
REALTY—STATUS OF RIGHTS OF SPOUSES.—The respective rights of
husband and wife in community property could not be changed by
a conversion of the property from personalty, in which form it
was prior to the adoption of section 172a of the Civil Code on
July 26, 1917, into realty after the adoption of said section, and
for the purpose of determining whether any vested right is disturbed, the realty will be regarded as though it had been acquired
before the adoption of said section.

**[2]** CONSTITUTIONAL LAW—TRANSFER OF PROPERTY—REGULATIONS BY
LEGISLATURE—DUE PROCESS.—While the legislature may prescribe
regulations concerning the method of transferring property and

change them at will, such regulations may not contravene the constitutional guarantee that one may not be deprived of his property without due process of law.

[3] HUSBAND AND WIFE — COMMUNITY PROPERTY — WIFE'S INTEREST NOT ESTATE WITHIN MEANING OF SECTION 700, CIVIL CODE.—A wife has but a possible interest in whatever community property remains upon a dissolution of the community otherwise than by her own death, which interest does not constitute an estate within the meaning of section 700 of the Civil Code.

[4] ID.—DECISIONS OF SUPREME COURT—PROPER INTERPRETATION OF SPANISH LAW.—The early decisions of the supreme court, wherein was laid down the rule that during the existence of the community title to the community property is vested in the husband, are not open to the criticism that the whole system of community property in this state rests upon a misconception of the Spanish law embodied in *Van Maren* v. *Johnson*, 12 Cal. 308.

[5] ID. — COMMUNITY PROPERTY — ABSENCE OF VESTED INTEREST IN WIFE.—It cannot be held to have been the law that before the adoption of section 172a of the Civil Code a wife had any vested interest in the community property before dissolution of the community.

[6] ID.—VESTED INTEREST OF HUSBAND—NATURE OF WIFE'S INTEREST —CONSTITUTIONAL LAW.—The husband is the owner of the community property, and, except for such restrictions as the legislature may have authority to impose, he has the unqualified right to dispose of it, and the wife has but a mere expectancy and not a title or interest which she would convey by joining in the deed. Under these circumstances, to provide that the husband must now obtain the consent of his wife to transfer realty acquired at a time when no such limitation was imposed on his right of alienation would deprive him of a vested right.

[7] ID.—COMMUNITY PROPERTY ACQUIRED PRIOR TO ADOPTION OF SECTION 172A, CIVIL CODE—JOINDER OF WIFE IN DEED UNNECESSARY. Section 172a of the Civil Code requiring the wife to join in a deed of community real property has no application to a transfer by the husband alone of community real property purchased after the adoption of said section with community funds which had been acquired before the adoption of said section.

APPEAL from a judgment of the Superior Court of Monterey County. J. A. Bardin, Judge. Reversed.

The facts are stated in the opinion of the court.

Hugh R. Osburn for Appellant.

F. P. Feliz and Carey Van Fleet for Respondent.

Robbins, Elkins & Van Fleet, Thomas P. Boyd, Claude I. Parker and Samuel M. Shortridge, Jr., *Amici Curiae.*

LAWLOR, J.—Plaintiff, Elizabeth V. Roberts, and one William A. Roberts were husband and wife. On August 21, 1917, they purchased certain described land in Monterey County, the deed being taken in the name of William A. Roberts alone. The property was paid for out of community funds, substantially all of which had been accumulated before July 26, 1917, on which date section 172a of the Civil Code (Stats. 1917, p. 829), hereinafter considered, became effective. A house, also paid for with community funds, was later built upon the land and the couple occupied it as a home. As a result of domestic differences plaintiff, on January 24, 1920, commenced an action for divorce on the ground of extreme cruelty. An interlocutory decree of divorce was granted plaintiff February 20, 1920, and she was awarded, among other things, the real estate involved in this action. On January 23, 1920, William A. Roberts executed and delivered to defendant, J. F. Wehmeyer, a deed of the premises, which was recorded January 29, 1920, in which plaintiff did not join, and received as consideration therefor defendant's promissory note maturing in one year. Defendant at the time of the transaction knew that plaintiff and William A. Roberts were husband and wife and that they were occupying the house as their family home.

This proceeding was instituted by plaintiff to have the deed from William A. Roberts to appellant declared null and void and to have the title to the property declared to be in plaintiff, on the ground that a conveyance of community property by a husband is void under section 172a of the Civil Code unless his wife joins in its execution. The action was commenced on February 21, 1920, within one year of the date of the recordation of the deed and also before a final decree of divorce was granted. The finding is that the land was purchased with community funds "substantially all earned and acquired prior to July 26, 1917," and we shall therefore assume that the funds were all acquired before

that time. Judgment was rendered for plaintiff, from which defendant takes this appeal.

Prior to the amendment of 1917 (Stats. 1917, p. 829) section 172 of the Civil Code provided: "The husband has the management and control of the community property, with like absolute power of disposition, other than testamentary, as he has of his separate estate; provided, however, that he cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent thereto; and provided, also, that no sale, conveyance or encumbrance of the furniture, furnishings and fittings of the home, or of the clothing and wearing apparel of the wife or minor children, which is community property, shall be made without the written consent of the wife." By the amendment referred to the operation of section 172 was limited to community personal property and a new section (172a) was added to provide for the control of community real property. That section is as follows: "The husband has the management and control of the community real property but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; provided, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser, or encumbrancer, in good faith, without knowledge of the marriage relation shall be presumed to be valid; but no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate."

1. It is contended by appellant that section 172a has no application to the case at bar for the reason that under the decisions of this state the husband has always been regarded as the owner of the community property, and that to apply the section to transfers of property acquired before the section was adopted would deprive the husband of a vested interest in such property by restricting his power of alienation; that the realty in question is to be regarded as prior acquired property because, although transmuted into realty

after the section was adopted, it was purchased with personalty accumulated before that time.

[1]  Deferring until later the consideration of what the respective rights of husband and wife in the community property are, in our opinion they could not be changed by a conversion of the property from personalty into realty. In this respect no distinction existed between realty and personalty at the time the money in the case at bar was acquired. Whatever its form, the property had the *status* of community property and the rights of the spouses were fixed in it as such. It might be transmuted from personalty into realty and again into personalty without effecting any change in those rights, and no legislation subsequently passed could take away any of the vested rights of either of the parties in either form of property. This being so, no distinction could be drawn between the ownership of realty and the ownership of personalty, nor any condition imposed on the right of either spouse to acquire realty, which would deprive either of a vested right enjoyed in the whole of the community property prior to the enactment of the restriction. It follows that in this case the transmutation of the property into realty after the passage of section 172a could not affect any vested right of the husband in it as community property. For the purpose of determining whether any such right is disturbed, the realty must be regarded as though it had been acquired before the adoption of section 172a. Respondent contends that when the husband, having personalty of the community under his control after. the passage of section 172a, voluntarily exchanged it into realty, he exercised his constitutional right of alienation and took the realty subject to the restriction on his right of disposal. But in view of our conclusion that the whole of the community property was acquired subject only to the limitations in force at the time of its accumulation, this claim is without support.

[2]  It is true, as said in *Peck* v. *Walton,* 26 Vt. 82, that the legislature may prescribe regulations concerning the method of transferring property and change them at will, but such regulations may not contravene the constitutional guarantee that one may not be deprived of his property without due process of law. Prior to the adoption of section 172a, a husband in this state had the unqualified right to

sell the community realty. By that enactment his right to sell it is so far limited that it can be exercised only with the consent of his wife. Whether or not such a restriction is unconstitutional as applied to property acquired before its enactment depends on the nature of the husband's rights in such property.

2. It is claimed on behalf of respondent that although the courts of this jurisdiction have held that title to community property rests in the husband and that a wife's interest therein is a mere expectancy, she has in reality a vested interest in it, which she conveys by joining in the transfer or encumbrance. This, it is stated, has been recognized by the courts of all the other states having a community property system, and by the supreme court of the United States (*Beals* v. *Ares,* 25 N. M. 459 [185 Pac. 780]; *Kohny* v. *Dunbar,* 21 Idaho, 258 [Ann. Cas. 1913D, 492, 39 L. R. A. (N. S.) 1107, 121 Pac. 544]; *La Tourette* v. *La Tourette,* 15 Ariz. 200 [Ann. Cas. 1915B, 70, 137 Pac. 426]; *In re Williams,* 40 Nev. 241 [L. R. A. 1917C, 602, 161 Pac. 741]; *Warburton* v. *White,* 176 U. S. 484 [44 L. Ed. 555, 20 Sup. Ct. Rep. 404]; *Arnett* v. *Reade,* 220 U. S. 311 [36 L. R. A. (N. S.) 1040, 55 L. Ed. 477, 31 Sup. Ct. Rep. 425, also, Rose's U. S. Notes]), and it is urged that this court has recognized in a wife many rights over community property which are inconsistent with the view that she has no vested interest in it. Thus, it is pointed out, a wife's rights in such property have been held to constitute a valuable consideration for an agreement or transfer (*Estate of Brix,* 181 Cal. 667 [186 Pac. 135]), and on the dissolution of the community by divorce the wife's half of the community property immediately vests in her as tenant in common with her husband (*DeGodey* v. *Godey,* 39 Cal. 158).

It is also argued that as an interest in property may be either present or future (Civ. Code, sec. 688) a future interest entitles the owner to possession of the property at a future period (Civ. Code, sec. 690), and a future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property upon the termination of the intermediate interest (Civ. Code, sec. 694), a wife has a vested future interest in the one-half of the community property which a husband cannot dispose of by will and which goes to the wife upon

the husband's death.  [3]  This position is not maintainable, in view of the decision in *Estate of Burdick,* 112 Cal. 387 [44 Pac. 734], wherein it was held that the wife has but a possible interest in whatever community property remains upon a dissolution of the community otherwise than by her own death, which interest does not constitute an estate within the meaning of section 700 of the Civil Code.

This court has often considered the relative rights of a husband and wife in the community property.  In *Spreckels* v. *Spreckels,* 172 Cal. 775 [158 Pac. 537], the conclusions reached in the various decisions are thus epitomized: "Under the statute prior to the addition of the first proviso in 1891, it was the established doctrine in this state that during the marriage the husband was the sole and exclusive owner of all the community property and that the wife had no title thereto, nor interest or estate therein, other than a mere expectancy as heir, if she survived him [citing authorities].

"The limitation upon the husband's testamentary power contained in the code was not understood to vest in the wife, during the marriage, any interest or estate whatever in the community property, but merely to constitute a restriction upon the husband's power."  It was further held in that case that the proviso added in 1891 (Stats. 1891, p. 425), imposing the limitation on a husband's right to make gifts of the community property, did not change this rule.  These principles are thoroughly established in our law and have been rigidly adhered to at least from the early case of *Van Maren* v. *Johnson,* 15 Cal. 308.

It is contended by respondent, however, that the whole system of community property in this state rests upon a misconception of the Spanish law embodied in *Van Maren* v. *Johnson, supra.*  Counsel point out that that case was decided upon the authority of *Guice* v. *Lawrence,* 2 La. Ann. 226, and assert that while the Spanish law of community property was adopted in California and presumably in Louisiana, the rule laid down in *Guice* v. *Lawrence, supra,* is an innovation from the French law which has no place in our system. Further, *Guice* v. *Lawrence, supra,* is claimed to have been overruled in *Succession of Marsal,* 118 La. 212 [42 South. 778].  Much the same question was raised and decided in *Estate of Moffitt,* 153 Cal. 359 [20 L. R. A. (N. S.) 207, 95 Pac. 653, 1025], but, in view of the earnestness with which

counsel have pressed the claim, which is conceded to be opposed to the decision in that case, we have examined the Louisiana authorities and the commentators upon the Spanish law.

The Civil Code of Louisiana provides that a marriage shall superinduce a partnership or community of acquets or gains (Merrick's Rev. Civ. Code of La., art. 2399 [2369]), and that the husband is the head and master of such property, with power to alienate it, subject to certain limitations upon his right of making gifts and to the wife's right of action in case he fraudulently disposes of the property to her injury. (Id., sec. 2404 [2373].) This provision was held in *Guice* v. *Lawrence, supra,* to be an embodiment of the Spanish law. The court there said: "The rule of the Spanish law on that subject is laid down by Febrero with his usual precision. The ownership of the wife, says that author, is revocable and fictitious during marriage. As long as the husband lives and the marriage is not dissolved, the wife must not say that she has *gananciales,* nor is she to prevent the husband from using them, under the pretext that the law gives her one-half. But, *solutio matrimonio,* she becomes irrevocably the owner of one undivided half, in the manner provided by law for ordinary joint ownership. The husband is, during marriage, *real y verdadero dueno de todos, y tiene en el efecto de su domino irrevocable.* [Citing authorities.] . . .

"The proviso of art. 2373 [2404] cannot be construed as giving or recognizing a title to or in the wife."

From subsequent cases it does not appear that the courts of Louisiana have departed from this view of the law, but rather that they have uniformly followed it. (*Tourne* v. *Tourne,* 9 La. 452; *Succession of Boyer,* 36 La. Ann. 506; *Landreaux* v. *Louque,* 43 La. Ann. 234 [9 South. 32].) Nor were the earlier cases overruled by *Succession of Marsal, supra.* That case involved the legality of an inheritance tax sought to be collected upon a usufruct given by a statute providing in effect that where one spouse died without disposing by will of his or her share of the community property, the surviving spouse, in addition to his or her own share of the community property, should take a usufruct in the half of which the other might have disposed. The court held that by this language of the statute it was not intended

that the wife should take the usufruct by inheritance, for it was provided the property in which the usufruct was allowed should be inherited by decedent's issue. Quoting from *Succession of Teller,* 49 La. Ann. 281 [21 South. 265], it was said: " 'The child of the marriage *inherits* the share in the community of the deceased parent, *subject to the usufructuary rights of the surviving parent.*' (Italics by present writer.)" This holding is not inconsistent with the theory that the husband owns the community property, for the usufruct is created in the estate of her heir, not in that of the community while it exists. Such an enactment provides for the disposal of the property *on the dissolution of the community.* That the endowment of a wife with this usufructuary right does not vest title to the estate in her during the continuance of the community is shown by the later case of *Peck* v. *Board of Directors,* 137 La. 334 [68 South. 629], wherein it is declared: "Differently from the wife, whose interest in the community is residuary, the husband, as head and master of the community, owns the property during its existence, with full power of alienation, and after its dissolution by the death of the wife continues to own one-half with full power of alienation," and the recent case of *Jacob* v. *Falgoust,* 150 La. 22 [90 South. 427], stating that "The wife's title, during the existence of the community is inchoate. *McDonough* v. *Tregre,* 7 Mart. (N. S.) [La.] 68; *Brassac* v. *Ducros,* 4 Rob. [La.] 335. The title remains in the meantime in the husband, as head and master of the community."

Moreover, the view of the Spanish law adopted in *Guice* v. *Lawrence, supra,* is agreed by the text-writers to be correct. The following quotation from Febrero appears in Ballinger on Community Property, section 32 (1 Feb. Mej. 225, secs. 19, 20): "The wife is clothed with the revocable and feigned dominion and possession of one-half of the property acquired by the husband during the marriage; but, after his death, it is transferred to her effectively and irrevocably, so that, by his decease, she is constituted the absolute owner in property and possession of the half which he left her. The husband needs not the dissolution of the marriage to constitute him the real and veritable owner of all the *gananciales,* since, even during the marriage, he has in effect the irrevocable dominion, and he may administer, exchange, and,

191 Cal.— 39

although there be neither *castrenses* nor *quasi castrenses* acquired by him, may sell and alienate them as he pleases, provided there exists no intention to defraud the wife.''

In McKay on Community Property, Introduction, section VI, it is said: ''The use of the term 'marital partnership' as a synonym for the Spanish community between husband and wife in the matrimonial gains suggests many false analogies especially to lawyers trained in the learning of the common law, and the original Spanish idea has in some instances suffered at their hands. The community is not a partnership; it is lacking in nearly all the attributes of a partnership; there is a sort of a community of interests in the matrimonial gains, but even this interest has no likeness to a partnership interest, and the powers of the spouses are totally different from those of partners. . . .

''The words 'community property' suggest the idea of a common ownership, but this suggestion, too, is false, though it has been adopted in Texas and Washington. According to the Spanish law, community property is such as the spouses share together on a *dissolution of* the marriage, not such as they *own* together *during* marriage.'' After considering what the respective rights of the parties in the community property are under the Spanish law, the same author says (sec. 10, p. 44) : ''Now if the wife has no present right to a given thing, but is limited to a *share* of the common fund on the dissolution of the marital partnership, it is clear that the wife does not hold what we call the legal title, to any given article of the community property, and it follows that the full legal title is in the husband; her right is to share in the surplus of the matrimonial gains after paying the debts chargeable against it,'' that (sec. 287, p. 349) : ''From the best evidence obtainable it seems reasonably certain that under the Spanish law the husband, during the marriage, held the full proprietary right in common property and that the wife had no actual proprietary right whatever,'' and that (sec. 11, p. 44) ''California, Louisiana and New Mexico have adhered to the Spanish doctrine that until the dissolution of the community the wife has no *proprietary* right, while Texas and Washington have adopted the doctrine that the spouses during marriage have an equal proprietary right.''

[4] It clearly appears from the foregoing that the early decisions of this court, wherein was laid down the rule that during the existence of the community title to the community property is vested in the husband, are not open to the criticism advanced. They rest upon sound authority and a proper interpretation of the Spanish law as incorporated in the statutes of this state through which the community property system was established. If anything to the contrary appears in such cases as *Beard* v. *Knox*, 5 Cal. 252 [63 Am. Dec. 125], that case being authority for the proposition that the husband may not make testamentary disposition of the wife's half of the community property, it has been disapproved. (*Estate of Moffitt*, 153 Cal. 359, 360 [20 L. R. A. (N. S.) 207, 95 Pac. 653, 1025].) [5] It cannot be held to have been the law, as argued by respondent, that before the adoption of section 172a of the Civil Code, a wife had any vested interest in the community property before dissolution of the community.

The cases from various other community property states undoubtedly have held that the wife has an estate during coverture, but an examination of those decisions points wherein they are distinguishable from ours, and wherein, from the viewpoint of our decisions, they should not be followed. It is held in Louisiana and California that the statutes establishing systems of community property were intended to be an adoption of the Spanish law and hence that the incidents of the system as it was understood to exist under the laws of Spain should be deemed incorporated in our statutory law. This theory the courts of these two states have consistently followed. In other jurisdictions, notably Texas and Washington, the original characteristics of the community property law were not discussed in the early cases and it was simply held that the statutes gave equivalent rights of property to each spouse. (*Wright* v. *Hays*, 10 Tex. 130 [60 Am. Dec. 200]; *Holyoke* v. *Jackson*, 3 Wash. Ten. 235 [3 Pac. 841]. See, also, *La Tourette* v. *La Tourette*, *supra*.) In New Mexico and Idaho it has been held that because of certain provisions in the statutes peculiar to each jurisdiction an estate was vested in the wife. (*Arnett* v. *Reade*, *supra*; *Beals* v. *Ares*, *supra*; *Kohny* v. *Dunbar*, *supra*.) The supreme court of Nevada in *In re Williams*, *supra*, an inheritance tax case, frankly declined to follow

the decisions of this court. After a careful consideration of authorities from other jurisdictions, including many where dower statutes prevail, and the Nevada statutory provisions, it was held in that case that the half of the community property taken by the wife upon her husband's death was not subject to the inheritance tax. No allusion was made to the origin of the system or the respective rights of the spouses under the Spanish law. In our opinion neither these authorities nor any other considerations would justify us in overturning a rule of property which has been settled law in this state for more than sixty years.

[6] It thus appears that the husband is the owner of the community property; that except for such restrictions as the legislature may have authority to impose he has the unqualified right to dispose of it and that the wife has but a mere expectancy and not a title or interest which she would convey by joining in the deed. Under these circumstances, to provide that the husband must now obtain the consent of his wife to transfer realty acquired at a time when no such limitation was imposed on his right of alienation would deprive him of a vested right. (*Spreckels* v. *Spreckels*, 116 Cal. 339 [58 Am. St. Rep. 170, 36 L. R. A. 497, 48 Pac. 228]; *Clavo* v. *Clavo*, 10 Cal. App. 447 [102 Pac. 556].)

[7] It follows that section 172a can have no application to such a case, and hence does not govern the transfer in the case at bar.

In arriving at this conclusion we are not unmindful of the two decisions rendered in the case of *Blum* v. *Wardell*, one by the United States district court, 270 Fed. 309, and the other by the United States circuit court of appeals, 276 Fed. 226. That action was brought to recover an estate tax paid under protest to the government on the half interest of the wife of the decedent Blum in the community property which passed to her under the laws of this state upon his death. The tax was levied under the revenue act of 1916 (39 Stats. 776, 777 [Comp. Stats., sec. 6336½b et seq]), which imposed an inheritance tax upon the transfer of the net estate of a decedent "to the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as a part of his estate." The California Inheritance

Tax Act of 1917 (Stats. 1917, p. 880) provides that, for the purpose of the act, half the community property which goes to the widow on the death of the husband should not be deemed to pass to her as heir of her husband, but should go to her as for a valuable and adequate consideration, and should not be subject to the inheritance tax law of the state.

In the decision of the United States district court it was held unqualifiedly that section 172a of the Civil Code recognizes in the wife a "valid, subsisting, vested interest and estate in the community property during the life of the husband." In the decision of the circuit court of appeals it was held that the interest of the decedent was to be determined by the law of the state where the property is situate, the court saying: "In the present instance the law of that state is declared by the statute enacted in 1917, providing that so far as state inheritance taxes are concerned, the wife of a decedent acquires upon his death one-half of the community property in her own right, and not as heir of the husband; in effect, therefore, that in so far as state inheritance taxes are concerned, the estate of a decedent has no interest of any sort in the wife's half of the community property. That, in our opinion settles the question here presented against the contention of the government; for we not only see nothing in the above-quoted provision of the United States statute to indicate any intention to impose a federal inheritance tax upon the wife's half of community property which the statute of the state where the property is situate expressly declares passes to the wife upon the death of her husband in her own right and not as heir, but the federal statute, as will be seen, expressly declares as one of the essential conditions to the imposition of a federal inheritance tax that the net estate of the decedent shall be 'subject to distribution as part of _his_ estate.' " The court then stated that, even if the case were not controlled by the Inheritance Tax Act of 1917, the sole question being one of federal inheritance tax, the rule of law announced in _Arnett_ v. _Reade_, 220 U. S. 311, 320 [36 L. R. A. (N. S.) 1040, 55 L. Ed. 477, 31 Sup. Ct. Rep. 425, 426, see, also, Rose's U. S. Notes], was applicable, wherein it was said: "It is very plain that the wife has a greater interest than the mere possibility of an expectant heir."

We need express no opinion of the decision of the United States district court for, as we have already held, section 172a has no application to the property involved in the case at bar.

We agree with the decision of the circuit court of appeals in so far as it is based on an interpretation of the Inheritance Tax Act of 1917 to the effect that the part of the community property passing to the wife should not be subject to such tax. But in so far as it relies on *Arnett* v. *Reade, supra,* as indicating that a wife has at all times had an interest or estate in the community property, we are constrained to disagree with it. The latter case arose in the territory of New Mexico and turned upon the construction of a statute of the territory, passed in 1901, which provided that neither husband nor wife should transfer or encumber community real property by onerous title unless both join in the execution thereof. The supreme court of the territory held that the statute did not apply to community real property acquired before its passage because the husband was the absolute owner of such property and would be deprived of vested rights if the statute were construed as applicable to property so acquired. This decision was reversed by the supreme court of the United States upon the ground that the position taken by the territorial court was in conflict with the old law of New Mexico, which, in effect, was that, after payment of the common debts, the deduction of the survivor's separate property and his half of the acquest property and subject to the payment of the debts of the decedent the remainder of the acquest property and the separate estate of the decedent shall constitute the body of the estate for descent and distribution. It was accordingly held that prior to the passage of the statute of 1901 the wife had a greater interest than a mere possibility, and that the statute did not change the estate which the husband had prior to the passing of the statute. The case is to be distinguished from the one at bar, for, as already indicated, in this jurisdiction a husband is held to have absolute ownership of the community. It may be noted in this connection that a conflict of opinion apparently exists with reference to the law of Louisiana, under which the state courts have held that title rests in the husband, whereas the United States district court has held otherwise. (*Liebman* v. *Fontenot,* 275 Fed. 689.)

Because of our conclusion that the property in this case is to be regarded as having been acquired before the adoption of section 172a, it is unnecessary to consider the question, argued at length by the parties, whether, with reference to after-acquired property, the section creates an estate in the wife which she had not theretofore possessed, and if so, whether a transfer of such property by the husband alone would be void or voidable. Nor is it necessary to consider the contentions which appellant makes that the action was prematurely commenced and that William A. Roberts was a necessary party to its complete disposition.

Finally, it may be said that no title could have vested in respondent by virtue of the interlocutory decree of divorce. Aside from the proposition that the community property may be divided only upon a dissolution of the marriage and that an interlocutory decree is not such a dissolution (*Brown* v. *Brown,* 170 Cal. 1 [147 Pac. 1168]; *Pereira* v. *Pereira,* 156 Cal. 1 [134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac. 488]; *Remley* v. *Remley,* 49 Cal. App. 489 [193 Pac. 604]), the deed to appellant was valid and title vested in him. The property involved no longer belonged to the community and respondent has no claim to it.

The judgment is reversed.

Wilbur, C. J., Lennon, J., Myers, J., Seawell, J., and Waste J., concurred.

Rehearing denied.

All the Justices concurred.