**ROBBINS et al. v. UNITED STATES.**

(District Court, N. D. California, S. D. April 29, 1925.)

No. 17338.

1. **Courts ⬤➡368—Effect of decisions of state court, United States Supreme Court, and Circuit Court of Appeals on District Court, in action involving character of income for taxation purposes, stated.**

The District Court, in an action involving the question as to whether the community income in the state of California is taxable to husband alone, or taxable one-half to husband and one-half to wife, is not bound by the California decisions in determining whether, under the laws of California, the wife's interest is a mere expectancy, or is a genuine interest and taxable as such, where such decisions, taken all together, have not clearly determined the question, but is bound by the decisions of the Supreme Court of the United States and of the Circuit Court of Appeals in a California case on the question, though in conflict with the California decisions.

2. **Internal revenue ⬤➡7—Community income in California taxable one-half to husband and one-half to wife.**

Community income in California is not taxable to husband alone, but is taxable one-half to husband and one-half to wife, since wife's interest is a genuine estate, in that the money or property acquired becomes a fund out of which she is entitled to support, and in the accumulation of which she has a genuine interest, and the undue dissipation of which she has the power to prevent, and is not a mere nontaxable expectancy, under Civ. Code Cal. §§ 146, 162, 164, 169, 172, 172a, 1401, St. Cal. 1901, p. 598, St. Cal. 1913, p. 537, St. Cal. 1917, pp. 829, 880, St. Cal. 1921, p. 1500, and St. Cal. 1923, p. 694, and in view of Civ. Code Ariz. 1913, pars. 1100, 3848, 3850, Comp. St. Idaho 1919, §§ 4659, 4666, 4667, 7803, Rev. Civ. Code La. arts. 915, 916, 2402, 2404, Rev. Laws Nev. §§ 2155, 2160, Code N. M. 1915, §§ 2757, 2758, 2766, 1840, 1841, Rev. St. Tex. arts. 2469, 4621, 4622, and Rem. Comp. Stat. Wash. §§ 6890-6893.

At Law. Action by R. D. Robbins, Jr., and Sadie Robbins, as executors of the last will and testament of R. D. Robbins, also known as Reuel Drinkwater Robbins, also known as Reuel D. Robbins, deceased, against the United States. Judgment for plaintiffs.

Lloyd M. Robbins, Peter F. Dunne, Carey Van Fleet, Robbins, Elkins & Van Fleet, Dunne, Brobeck, Phleger & Harrison, and Preston & Duncan, all of San Francisco, Cal., and O'Melveny, Millikin, Tuller & Mac-Niel, of Los Angeles, Cal., for plaintiffs.

Sterling Carr, U. S. Dist. Atty., of San Francisco, Cal. (A. W. Gregg, Sol. of Internal Revenue, of Washington, D. C., and Frederick W. Dewart, Sp. Asst. Atty. Gen., of counsel), for the United States.

PARTRIDGE, District Judge. This is an action to recover the sum of $6,788.03, income tax paid by R. D. Robbins for the year 1918. Admittedly, however, it is presented here as a test case, in order that appeal may be had directly to the Supreme Court, and it is said that, if the suit goes against the government, the treasury will be compelled to refund to citizens of the state of California a sum in excess of $77,000,000.

R. D. Robbins and Sadie M. Robbins were married in 1871, and continued as husband and wife until his death in 1919. During those years a large fortune was accumulated. In 1918, Mr. and Mrs. Robbins attempted to file returns, each for one-half of the income of the property thus jointly accumulated. The collector refused to accept these returns, and insisted that the tax be assessed as if the income all belonged to the husband. Accordingly the amount of tax paid was $11,079.46; whereas, if each had made a separate return, Mr. Robbins would have been compelled to pay only $4,291.43.

The case is submitted upon an agreed statement of facts, and it is conceded that the entire income was from community property and from earnings of the husband. The problem thus squarely presented is: Should community income in the state of California be taxed to the husband alone, or is it taxable one-half to each the husband and wife?

The treasury has rightly refused to answer this question, because it has before it conflicting opinions of its legal advisers, and

because of the frequent expressions of the Supreme Court of California, declaring that the wife's interest in the community property is "a mere expectancy." Nor is it surprising that the law department of the government should find itself in doubt, because: (1) The Supreme Court of the United States has declared that the wife has a real interest. (2) The courts of last resort of all the states except California have announced the same doctrine. (3) California alone has named that interest a mere expectancy, like that of an heir.

I think, however, that the differences are of form, and not of substance. At the outset, this much is apparent: (1) The Legislature of California, following the behest of the Constitution of 1849, has, building upon the Spanish-Mexican system, continually extended and broadened the rights of the woman in community property. (2) The Supreme Court of California, however much it may have deemed itself constrained by precedent to label the wife's interest, has never denied her that interest, but, on the contrary, has consistently fortified it when attacked, and granted it when questioned, in all substantial particulars. (3) There is no difference in substance between the views of the Supreme Court of California and the other states having the community system.

The question first came before the treasury in 1920, with regard to Texas. On the 24th of August of that year, Attorney General Palmer rendered an opinion, in which he held that in Texas the earnings of husband and wife are community property, and hence each could make a return of one-half thereof. In accordance with that opinion, the treasury issued its order (T. D. 3071) permitting returns to be made in this manner. On February 26, 1921, Attorney General Palmer extended this doctrine to Washington, Arizona, Idaho, New Mexico, Louisiana, and Nevada, but specifically ruled against its application to California. Upon this, the treasury (T. D. 3138) accepted returns from husband and wife from all states except California; the ruling being placed upon the ground that "in all of the community property states, except California, their own courts have held that the wife has, during the existence of the marriage relation, a vested interest in one-half of the community property." At the time this ruling was made, this court (through Judge Rudkin, then District Judge, and now in the Circuit Court of Appeals) had held that the wife's share of the community property was not subject to the estate tax. Blum v. Wardell, 270 F. 309.

After the issuance of T. D. 3138, the Circuit Court of Appeals for this circuit affirmed the decision of Judge Rudkin. Wardell v. Blum, 276 F. 226. The government filed a petition in the Supreme Court for certiorari, which petition was denied March 6, 1922. 258 U. S. 617, 42 S. Ct. 271, 66 L. Ed. 793.

After certiorari was denied in Wardell v. Blum, the government moved the Supreme Court to revoke or recall its order, upon the ground that there was pending in the California courts a case which might dispose of the question. That was Roberts v. Wehmeyer, which had been decided by the District Court of Appeal of California November 21, 1921, and which was then pending in the state Supreme Court on rehearing. This case was decided by the California Supreme Court September 13, 1923. Roberts v. Wehmeyer, 191 Cal. 601, 218 P. 22.

It was evidently deemed by the government, however, that there was nothing in Roberts v. Wehmeyer which affected the decision in Wardell v. Blum, and accordingly the Solicitor General consented that the motion to revoke the order denying certiorari should be denied. After Wardell v. Blum thus became final, and on March 8, 1924, Attorney General Daugherty rendered an opinion, holding in effect that the same rule should be applied in California as in other community property states. The treasury (T. D. 3568), in accordance with this opinion, put this state in the same category as the others. However, on May 27, 1924, Attorney General Stone withdrew the opinion of Mr. Daugherty for further consideration. On the 9th of October, Judge Stone gave his opinion, and on February 7, 1925, the treasury published T. D. 3670, applying the rule in the matter of estate taxes, but denying its application to income.

In the opinion of Judge Stone, it is noteworthy that he calls attention to the fact that in 1921, and again in 1924, the treasury presented bills to Congress on this subject. His language is as follows:

"While the act of 1921 was under consideration, I am informed that officials of the treasury attempted to have a provision inserted making community property a part of the gross estate. The ways and means committee refused to accept this proposed amendment. In the bill which was prepared in the Treasury Department, and which as amended became the act of 1924, there was a provision requiring so-called joint income

of husband and wife under the community property law of California to be returned, for purposes of taxation, as a single income of the husband.

"After hearings before the ways and means committee and the submission of extensive briefs in opposition t the proposal, the committee struck from the bill the provision for taxing community income as single income, and the bill, as enacted, did not set aside or modify the application of the legal rule laid down in Blum v. Wardell. Notwithstanding the fact that there have been two general revisions of the Revenue Act, and the question involved in the decision of Blum v. Wardell has been distinctly presented to the legislative branch of the government, the principle of that decision has been left undisturbed by Congress."

It is also apparent that neither Mr. Daugherty nor Judge Stone considered that there was any settled principle in California by which the matter could be determined. Mr. Daugherty said: "In fact, I am of the opinion that no established rule can be gathered from the decided cases in that state." The view of Judge Stone is as follows:

"The confusion in the decisions of the California courts has undoubtedly arisen from the fact that the courts have been attempting, in their opinions, to apply the terminology of the common law to community property, which embodies a legal concept wholly foreign to the common law, and to which the terminology of the common law cannot be applied with accuracy and precision. In most of the California decisions in which it was asserted that the right of the wife is a mere expectancy or right of inheritance, the same result could have been reached if the court had rested its decision upon the view that the wife had a vested interest in the community property subject to a power of disposition vested in the husband. See Spreckels v. Spreckels, 116 Cal. 339; Estate of Wickersham, 138 Cal. 355; Dargie v. Patterson, 176 Cal. 714. Whereas, in other cases holding that the wife's interest in the community is a vested interest, it seems. to be necessary to describe the legal relationship of the husband to the wife's interest as a power of disposition in order to justify the decisions actually rendered. See Estate of Brix, 181 Cal. 667; Taylor v. Taylor, 218 P. 757. This, however, only suggests that a common-law term may be resorted to, to describe the incidents of community property in some aspects, but be wholly inappropriate to describe them for other purposes."

California was carved out of territory which had but lately been a part of Mexico; that is, Spanish in language, customs, and laws. It is probable that, in 1849, the vast majority of the land was owned by people of Spanish ancestry, and held by Spanish or Mexican title. The influence of the language survives in the names of many of our cities—San Francisco, Los Angeles, San Jose, Monterey. It was, perhaps the most typically Spanish of any part of American territory. When it came to framing a constitution, however, the tide of immigration had brought in many lawyers from the common-law states, men of character, ability, and learning. These men largely preponderated in the convention which was assembled to frame a Constitution. Among the clauses ably and eloquently debated was the one relating to the property rights of married women. The common-law doctrine was most brilliantly presented; but, on the other hand, there were not wanting men who contended that, inasmuch as the "Californians"—that is, the Spanish-Mexican inhabitants—had lived under the law which gives the wife more extensive power over property, it was right in practice, as well as theoretically just and wise, to adopt that system. The latter views prevailed, and the following clause became a part of the Constitution under which California was admitted as a state and became a part of the Union:

"All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, shall be her separate property; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property, as to that held in common with her husband. Laws shall also be passed providing for the registration of the wife's separate property."

It is evident, therefore, that (1) the theory of the common law as to the status of the wife with reference to property was deliberately rejected; (2) the theory of the Spanish law was quite as deliberately preferred and adopted; (3) the system was adopted in the light of the only body of legislation and jurisprudence which acknowledged it, namely, the Spanish; [1] (4) California was admitted to the Union upon the basis of a charter of fundamental law with provisions as to the rights of married women different from the common-law rules then

---

[1] This, of course, ignores the fact that the Code Napoléon had changed the law of France by adopting a community system. If this fact was known to any of those who participated in the debates in the constitutional convention, no allusion was made to it.

prevailing in the other members of that Union.

The Supreme Court of California, early and late, has consistently recognized that the law of this state must be interpreted in the light of the Spanish law. The Legislature, in obedience to the constitutional mandate, immediately enacted statutes defining the rights of husband and wife, both in the separate property of each, and the community property. Stat. 1850, p. 254. The Supreme Court, in Panaud v. Jones, 1 Cal. 513, says that "the law respecting the property of husband and wife in California has undergone but little alteration in consequence of the passage of the Act of April 17, 1850," and, after quoting certain sections of that act, declares it to be a "correct exposition of the Spanish law respecting the property of husband and wife." In Packard v. Arellanes, 17 Cal. 537, the Supreme Court said:

"Our whole system, by which the rights of property between husband and wife are regulated and determined, is borrowed from the civil and Spanish law, and we must look to these sources for the reasons which induced its adoption, and the rules and principles which govern its operation and effect. The relation of husband and wife is regarded by the civil law as a species of partnership, the property of which, like that of any other partnership, is primarily liable for the payment of its debts. 'The law,' says Schmidt, in his work on the Civil Law of Spain and Mexico, 'recognizes a partnership between the husband and wife as to the property acquired during marriage.'"

In Spreckels v. Spreckels, 116 Cal. 347, 48 P. 228, 36 L. R. A. 497, 58 Am. St. Rep. 170, it is said that the system of community property was inherited from Spain. In Estate of Moffitt, 153 Cal. 363, 95 P. 653, 1025 (20 L. R. A. [N. S.] 207), the court said:

"The Spanish-Mexican civil law was, of course, the law in force in California at the time of its cession by Mexico to the United States, and it was the design of the Constitution of 1849 to preserve, so far as might be, to the wives of the inhabitants of the new state (most of whom were at that time former citizens of Spain or Mexico) the rights to the community property which they had enjoyed under the Mexican rule."

It is, then, thoroughly established that the community system came from Spain, through Mexico, and that this system, in its fundamental aspect, is the Spanish system. The word "fundamental" is used advisedly, because, of course, there have been statutory changes in detail.

The case was argued by the government as if there was nothing real in the wife's right until she should cease to be a wife. It was boldly stated, in effect, that the difference between her right and the right of dower was merely one of name and degree. In the opinion of this court the distinction forms the fundamental of the system, and that fundamental may be thus expressed: The wife's interest in the acquests of her husband is a genuine estate, in that the money or property acquired becomes a fund out of which she is entitled to support, and in the accumulation of which she had a genuine interest, and the undue dissipation of which she has the power to prevent.

The inquiry, as to whether or not that is a correct statement, therefore, depends upon these considerations: (1) At the time of the adoption of the Constitution of 1849, was that the Spanish law? (2) Is there any difference between the statutes of this state and those of the states where the government has conceded it? (3) Can it be said that the express declaration of the law of California that the community is one of the interests in property, and the system, long recognized and adopted, means nothing more than that it is an interest which does not commence until the community ends by the death of the husband or a decree of divorce? (4) In view of the decisions of the Supreme Court of the United States, and the Circuit Court of Appeals, is this court bound by the *language* of the Supreme Court of California?

1. Community property seems to have been unknown to the civil as well as to the common law. Some cases, indeed, seem to say, without much consideration, that it comes from the civil and Spanish law. I think, however, that the authors of those opinions have been misled by the fact that it was incorporated into the Code Napoléon, and perhaps by this road found its way into Louisiana. Nothing could be clearer, at any rate, than that it did not exist in France prior to the Code Napoléon. It seems almost equally clear that it found its way into Spain from sources far north of east, from the Visigoths and not from Rome, a product Germanic, and not Italian, of Euric or Tolosa, and not the Cæsars. It appears first codified (so far as I know) in the Fuero Juzgo, of which Walton, in his work on Civil Law in Spain says: "The latter remarkable and original Code, the Fuero Juzgo, had for its basis a multitude of institutions purely Germanic, such as the property of the conjugal community (gananciales) and advantages

(mejoras) which even to-day are of much more importance in Spanish civil legislation."

What that law really was, it seems to me, is best stated in the book by Felipe Sanchez Roman, tomo quinto (2d Ed.) vol. 1, p. 339, as follows: "The property of the conjugal community belongs, while it exists, and afterwards individually, 'to each of the spouses by halves, * * * from which the ancient experts deduce that the distinction of dominion in habitu, which the wife has, and the dominion in actu, which the husband has, in the ganancial property, is because one was proprietor without administration, and the other proprietor with it,' " etc.

That this view of it prevailed for hundreds of years in Spain, and was carried into Mexico, there can be no doubt. In Spain, as late as 1898, the Supreme Court at Madrid (Sentencia 28 Enero, 1898; Gac. 26 Febrero, p. 135) uses this language: "Considerando, por ultimo, que no prevalaciendo el recurso por los fundamentos relativos a la prueba, no pueda resultar violada por el fallo lay ley 4, tit. 4 lib, 10 de la Nov. Recop., en la que se establece que los bienes que han marido y'mujer son de ambos por medio, salvo los que probase cada uno que son suyos apardamente."

In the Novisima Sala Mexicana occurs the following language: "* * * El segundo de que se ocupa todo el titulo 9 del libro 5 de la Recopilacion, o sea el 4 del libro 10 de la Novisima, y que no conocio el derecho romano, es le adquisicion para ambos conjuges por mitad de lo que cada uno ganare durante el matrimonio; de modo que todos los bienes que tuvieren el marido y la mujer, son de ambos por mitad, menos aquellos que alguno de los dos probare que le pertenecen separadamente."

The latter part, which may be translated, "so that all of the properties which the husband and wife may have belong to both equally, excepting those which either of the two may prove belongs to him separately," seems to me to have been the law of Spain for 1,400 years, of Mexico since that fatal 5th of September, 1519, when Xicotencath hurled his naked warriors against the armorclad host of Cortes, and of California from the time of Father Serra.

2. The act of 1850 defined community property as "all property acquired after the marriage by either husband or wife, except such as may be acquired by gift, bequest, devise or descent." Stat. 1850, p. 254. This provision, whatever other changes may have occurred, has remained to the present day. Civil Code, §§ 162, 163, 164.

It is plain that, in the very definition of community property, such as obtains in California, the earnings of both husband and wife would be community property, unless, as in the special case of the wife living separate and apart (Civil Code Cal. § 169), the wife's earnings were expressly excepted by statute from the general rule, and the decisions of the California courts hold accordingly. Washburn v. Washburn, 9 Cal. 475; Martin v. Southern Pacific Co., 130 Cal. 285, 62 P. 515; Fennell v. Drinkhouse, 131 Cal. 447, 63 P. 734, 82 Am. St. Rep. 361. These general characteristics of community property, common to all the community property states, including California, are recognized in the series of opinions on this subject issued from the Attorney General's office, as published in Treasury Decisions 3071, 3138, and 3569, and will appear from a comparison of the California statutes on the subject, above referred to, with the corresponding statutes of the other community property states. In New Mexico and Nevada the statutes defining separate and community property are almost literal copies of the California statutes.

Now, in what manner do the statutes of the other community property states differ? The variations fall under several heads:

(a) In some states, the income from separate property becomes community property. Thus in Idaho the rents and profits of the separate property of husband and wife are community property. Section 4659, Comp. Stat. Idaho. So in Louisiana the income of separate property becomes community property (section 2402, Rev. Civ. Code La.), and in Texas income from separate property is community property, except that, since 1917, rents from separate real property are the separate property of the owner of the land (section 4621, Rev. Stat. Tex.; Barr v. Simpson, 54 Tex. Civ. App. 105, 117 S. W. 1041; Hayden v. McMillan, 4 Tex. Civ. App. 479, 23 S. W. 430). In the other four community property states, income from separate property, as in California, is not community property. Section 3848, Civ. Code Ariz. 1913; sections 2757, 2758, Code N. M. 1915; section 2155, Rev. Laws Nev.; sections 6890, 6891, Rem. Comp. Stat. Wash. 1922. So it will be noted that in this particular those states which differ from California are less favorable to the wife (in that the income from her separate estate belongs to the community) and more favorable to her (because the income from the hus-

band's separate estate becomes community property).

(b) In California, the wife's earnings (not living separate and apart from her husband) become community property. In Arizona (section 3850, Civ. Code Ariz.), as in California (section 169, Civ. Code Cal.), the earnings of a wife living separate and apart from her husband are her separate property; in Texas, the personal earnings of the wife are under the control, management, and disposition of the wife alone, and they are not subject to the payment of debts contracted by the husband (sections 4621, 4622, Rev. Stat. Tex.); and in Washington the wages of her personal labor are the separate property of the wife (section 6891, Rem. Comp. St. Wash. 1922). But, otherwise than as above noted, the earnings of the husband and of the wife in community property states are equally community property though in Nevada the wife has the disposition of her earnings, if used for the care and maintenance of the family (section 2160, Rev. Laws Nev.), and in Idaho the wife, since 1915, has had the management and control of her personal earnings (sections 4666, 4667, Comp. Stat. Idaho 1919).

In Idaho (section 4666, Comp. Stat. Idaho 1919), where income from the wife's separate property is made community property, and where her earnings are community property, these particular forms of community income do not come under the general dominion of the husband. In Louisiana, on the other hand, the oldest of the community property states, where income from the wife's separate estate and where her earnings are also community income, the husband has the management, control and disposition thereof. Section 2404, Rev. Civ. Code La.

(c) I come now to the vital question of the husband's control over the community property. Inasmuch as practically the whole bar of the eight community property states (as well as most of the citizens thereof) are concerned in this litigation, it seems worthwhile to quote them:

### Statutes Affecting Husband's Dominion Over Community Personalty.

#### Arizona.

"All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife and her minor children, while she has lived or may live, separate and apart from her husband, shall be deemed the common property of the husband and wife, and during the coverture personal property may be disposed of by the husband only; but husband and wife must join in all deeds and mortgages affecting real estate except unpatented mining claims, which may be conveyed by the husband or wife only, as provided by the laws of this state relating to conveyances: Provided that either husband or wife may convey or mortgage separate property without the other joining in such conveyance or mortgage." Section 3850, Civ. Code Ariz.

#### California.

"The husband shall have the entire management and control of the common property, with the like absolute power of disposition as of his own separate estate." Section 9, p. 254, Stat. Cal. 1850.

"The husband has the management and control of the community property, with the like absolute power of disposition (other than testamentary) as he has of his separate estate." Civ. Code Cal. § 172, as enacted March 31, 1872.

"The husband has the management and control of the community property, with the like absolute power of disposition, other than testamentary, as he has of his separate estate: Provided, however, that he cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent thereto." Civ. Code Cal. § 172, as amended by Stat. 1891, p. 425.

#### Idaho.

"The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he cannot sell, convey or incumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or incumbered." Section 4666, Comp. Stat. Idaho 1919.

"The wife has the management and control of the earnings for her personal services, and the rents and profits of her separate estate." Section 4667, Id.

#### Louisiana.

"The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife. He can make no conveyance inter vivos, by a gra-

tuitous title, of the immovables of the community, nor of the whole, or of a quota of the movables, unless it be for the establishment of the children of the marriage. Nevertheless he may dispose of the movable effects by a gratuitous and particular title, to the benefit of all persons. But if it should be proved that the husband has sold the common property, or otherwise disposed of the same by fraud, to injure his wife, she may have her action against the heirs of her husband, in support of her claim in one-half of the property, on her satisfactorily proving the fraud." Section 2404, Rev. Civ. Code La.

### Nevada.

"The husband has the entire management and control of the community property, with the like absolute power of disposition thereof, except as hereinafter provided, as of his own separate estate: Provided, that no deed of conveyance, or mortgage, of a homestead as now defined by law, regardless of whether a declaration thereof has been filed or not, shall be valid for any purpose whatever unless both the husband and wife execute and acknowledge the same as now provided by law for the conveyance of real estate." Section 2160, Rev. Laws Nev. 1912.

### New Mexico.

"The husband has the management and control of the community property, with the like absolute power of disposition, other than testamentary, as he has of his separate estate: Provided, however, that he cannot make a gift of such community property, or convey the same without a valuable, consideration, unless the wife, in writing, consent thereto; and provided, also, that no sale conveyance or incumbrance of the homestead, which is then and there being occupied and used as a home by the husband and wife, or which has been declared to be such by a written instrument signed and acknowledged by the husband and wife and recorded in the county clerk's office of the county, and furniture, furnishings and fittings of the home, or of the clothing and wearing apparel of the wife or minor children, which is community property, shall be made without the written consent of the wife. Section 2766, Code N. M., as in force in 1907 (Laws 1907, c. 37, § 16).

"The husband has the management and control of the personal property of the community, and during coverture the husband shall have the sole power of disposition of the personal property of the community, other than testamentary, as he has of his separate estate; but the husband and wife must join in all deeds and mortgages affecting real estate: Provided, that either husband or wife may convey or mortgage separate property without the other joining in such conveyance or mortgage; and, provided further, that any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect." Section 2766, Code N. M. 1915.

### Texas.

"All property acquired by either the husband or the wife during marriage, except that which is the separate property of either one or the other, shall be deemed the common property of the husband and wife, and during coverture may be disposed of by the husband only: Provided, however, the personal earnings of the wife, the rents from the wife's real estate, the interest on bonds and notes belonging to her and dividends on stocks owned by her shall be under the control, management and disposition of the wife alone, subject to the provisions of article 4621 as hereinabove written; and further provided that any funds on deposit in any bank or banking institution, whether in the name of the husband or the wife, shall be presumed to be the separate property of the party in whose name they stand, regardless of who made the deposit, and, unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such account." Section 4622, Rev. Stat. Tex.

### Washington.

"Property, not acquired or owned as prescribed in the next two preceding sections, acquired after marriage by either husband or wife, or both, is community property. The husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof." Section 6892, Rem. Comp. Stats. Wash.

From these statutes it is impossible to find any essential difference between the statutes of California and the other states upon this vital question of the husband's control over the community property.

In California, from 1850 to 1891, the husband had the management and control of the community property, with the like absolute power of disposition (other than testamentary) as he had of his separate estate.

Stat. Cal. 1850, p. 254; Stats. 1861, p. 310; Stat. 1863–64, p. 363; section 172 Civ. Code Cal. California courts, prior to 1891, held that the husband, however, could not voluntarily alienate the community property for the mere purpose of divesting the wife of her claims to it, Smith v. Smith, 12 Cal. 216, 226, 73 Am. Dec. 533; De Godey v. Godey, 39 Cal. 157, 164. In 1891 began a series of statutory changes in California designed to protect more completely the interest of the wife, during coverture, in the community property.

Since 1891 (Stat. Cal. 1891, p. 425) the husband has been without power to make a gift of the community property, or to convey the same without a valuable consideration, unless the wife in writing consented thereto. In Dargie v. Patterson, 176 Cal. 714, 169 P. 360, the Supreme Court recognized that this veto on gifts was conferred upon the wife "as a means of protecting her interest in the community property." Page 718 (169 P. 361). This interest of the wife in the community property thus protected is not a common-law tenancy by entirety, as such an interest in property is not recognized in California. Swan v. Walden, 156 Cal. 195, 103 P. 931, 134 Am. St. Rep. 118, 20 Ann. Cas. 194. The interest so protected, as held in Dargie v. Patterson, supra, "goes to every part and parcel of the community estate." Page 720 (169 P. 362). It is a right, under this decision, to an "undivided one-half interest in every item of property." Page 720 (169 P. 362).

Since 1901 (Stat. Cal. 1901, p. 598) the husband has been without power to convey or incumber the furniture, furnishings, and fittings of the home, or the clothing and wearing apparel of the wife or minor children, which was community property, even for a valuable consideration, without the written consent of the wife. Since 1913 (Stat. Cal. 1913, p. 537) no assignment of the wages or salary of a married person is valid, unless the written consent of the husband or wife of the person making the assignment is attached thereto. Since 1917 (Stat. Cal. 1917, p. 829) the wife must join with the husband in executing any instrument by which community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or incumbered. Thus in California since 1891 the dominion of the husband over the community property, during the marriage, has been increasingly limited.

Since 1891 the dominion of the husband in California over all community property during coverture has been no broader than it is in some of the other community property states, and it has been growing less and less broad, and ever since and subsequent to 1917 it is less broad than in any other community property state.

Prior to 1891, in California, a gift of community property by a husband to his mother, when reasonable in amount, was valid, in the absence of a fraudulent intent to defeat the claims of the wife in community property. Lord v. Hough, 43 Cal. 581. On the same principle, a gift of such property to children in California, prior to 1891, was valid under like circumstances. Jacobs v. All Persons, 12 Cal. App. 164, 106 P. 896. So in Nevada a gift of community property by the husband to trustees for the use of the people of a certain city was valid without the wife's consent thereto, where the property so given in proportion to the whole estate was not unreasonable, or indicative of a fraudulent intent to defeat the wife's claims. Nixon v. Brown, 46 Nev. 439, 214 P. 524. But since 1891 such gifts in California have been barred, except where the wife consented thereto in writing. Since 1891 the husband in California cannot make a valid gift of community property, real or personal, for the establishment of the children of the marriage, unless the wife consents thereto in writing; but without such consent the husband in Louisiana can lawfully make such a gift of community personalty for such a purpose. Section 2404, Rev. Civ. Code La.

In every one of the community property states, the husband, during the marriage, is given the management of the community real property. Section 3850, Civ. Code Ariz.; section 172a, Civ. Code Cal.; section 4666, Comp. Stat. Idaho, 1919; section 2404, Rev. Civ. Code La.; section 2160, Rev. Laws Nev.; section 2766, Code N. M. 1915; section 4622, Rev. St. Texas; section 6893, Rem. Comp. Stat. 1922, Washington. But in Nevada (section 2160, Rev. Laws Nev.), Louisiana (section 2404, Rev. Civ. Code La.), and Texas (section 4622, Rev. Stat. Tex.) the husband may convey the community real property for a valuable consideration, without the consent or signature of the wife. In Washington the husband has the management and control of the community real property, but he cannot sell, convey, or incumber it, unless the wife joins with him in executing the deed or other instrument of conveyance. Section 6893 Rem. Comp. Stat. Wash. 1922. In Arizona (section 3850, Civ. Code Ariz.), in Idaho (section 4666, Comp. Stat. Idaho 1919), and in New Mex-

ico (section 2766, Code N. M. 1915) the husband cannot sell or incumber community real property without the wife's written consent. In California, however, the husband since 1891 has been without power to make a gift of community real property, or to convey the same without a valuable consideration, unless the wife consented thereto in writing, and since 1917, under section 172a of the Civil Code of California, added to the Code in 1917 (Laws 1917, p. 829), the husband cannot convey, sell, or incumber the real property, or lease it for more than one year, without the consent and signature of the wife.

Thus from 1891 to 1917 his right to convey community real property without the wife's consent was no other than that possessed by husbands in Nevada, Louisiana, and Texas, or in New Mexico before 1915. Since 1917 in California alone is the wife's consent required to leases of community real property for more than one year. Thus from 1891 to 1917 in California the husband's dominion over community real property, during the marriage, was no broader than in three other community property states, and since 1917 it has not been as broad as in every other community property state. Prior to 1891, about the only practical power the husband had over community real property in California was the power to make a gift or transfer thereof that was not in fraud of the wife's claims.

As regards testamentary power over the community property, in Arizona (section 1100, Civ. Code Ariz.), in Idaho (section 7803, Comp. Stat. Idaho 1919), in Louisiana (sections 915 and 916, Rev. Civ. Code La.), and in Washington (section 1342, Gen. Stat. Wash.) the wife has the right to make testamentary disposition of one-half of the community property, in case she dies before her husband. The wife now has such a right in California also, although only since the 1923 amendment to section 1401 of the Civil Code (Stat. 1923, p. 29). However, in Nevada (section 2164, Rev. Laws Nevada) and in New Mexico (section 1840, Code N. M. 1915) the wife has no testamentary power over the community property, in case she dies before her husband, which was the law in California until the 1923 amendment.[2]

(d) In Idaho, Nevada, and New Mexico, the courts have called the wife's interest, in

[2] Upon this part of the opinion the court has been spared much labor by using the excellent compilation of Mr. Allen Wright, appearing as amicus curiæ for the Chamber of Commerce of San Francisco.

effect, a technical legal estate. Kohny v. Dunbar, 21 Idaho, 258, 121 P. 544, 39 L. R. A. (N. S.) 1107, Ann. Cas. 1913D, 492; In re Williams, 40 Nev. 241, 161 P. 741, L. R. A. 1917C, 602; Beals v. Ares, 25 N. M. 459, 185 P. 780. Yet even in those states her interest does not descend to her heirs, if she dies without making a will. Section 7803 Comp. St. Idaho; section 2164, Rev. St. Nev.; section 1840, Code N. M.

(e) Nor can the wife in those seven other community property states, where her interest in community property has been characterized as a technical estate, alienate that interest during coverture, when acting alone. The dominion over the community property and the whole of it is either vested in the husband alone, or in the case of real property, and in some states in the case of some special personal property, too, in the husband and the wife. These are the statutory provisions on the subject, and the court decisions are in accord. The wife in Texas is without power alone to transfer the community property or her half interest therein. Lasater v. Jamison (Tex. Civ. App.) 203 S. W. 1151. The wife in Nevada cannot dispose of community property or make any contract that binds it. Travers v. Barrett, 30 Nev. 402, 97 P. 126. Nor can the wife in Washington dispose of community property or her interest therein. McAlpine v. Kohler & Chase, 96 Wash. 146, 164 P. 755; Litzell v. Hart, 96 Wash. 471, 165 P. 393. In Idaho the wife cannot sell or incumber the community property. Kohny v. Dunbar, 21 Idaho, 258, 121 P. 544, 39 L. R. A. (N. S.) 1107, Ann. Cas. 1913D, 492. In Louisiana, "the husband is the head of the community, and has, by law, the right to administer the common property, and the wife has not the right to alienate such property, even for a common debt." Hart v. Gottwald, 15 La. Ann. 13. So that the possession of a technical estate in the community property gives to the wife no more power of alienation than she could claim if her interest in the community property had been likened to the expectancy of an heir.

(f) In California, on the dissolution of the marriage by divorce, the wife receives her half of the community property in every case, except where the divorce is decreed on the ground of extreme cruelty or adultery, in which cases the community property may be assigned to the spouses in such proportions as the court, from all the facts of the case and the condition of the parties, may deem just. Civ. Code Cal. § 146. In this particular the law of California is like the law of

Nevada (section 2166, Revised Laws of Nevada). Under the Spanish law, the wife sacrificed her interest in the community property by adultery. Loewy on Spanish Community of Acquests, 1 Cal. Law Review, pp. 32, 43. In New Mexico the community property is divided between the spouses on divorce or permanent separation. Sections 2744 and 2781, Code N. M. 1915. In Arizona and Washington, on divorce, the court may divide the community property as it sees fit. Section 3116, Rev. Stat. Ariz. 1901; section 989 Rem. Comp. Stats. Wash. 1922; Miller v. Miller, 38 Wash. 605, 80 P. 816. Without pursuing this subject further, it is clear, therefore, that there is no uniform rule in the community property states governing the disposition of community property on divorce.

(g) On the death of the husband in California, the wife shares as fully in the community property as in Arizona, Louisiana, New Mexico, or Washington. The wife in California, even though she took her half of the community property before 1917 as an heir to the husband, received as large a share of the community property as the wife would take as a survivor or by purchase in New Mexico, Arizona, Louisiana, or Washington. The statutes of New Mexico (section 1841, Code N. M. 1915) provide that, on the dissolution of the community by the death of the husband, the entire community property is subject to his debts, the family allowance, and the charges and expenses of administration. It is the half of the residuum of the community property which goes to the wife in New Mexico on the death of the husband. In California the wife, even though taking like an heir to her husband, gets as much. A like rule applies in Louisiana, Washington, and Arizona.

In Louisiana, the administration of the husband's estate includes the wife's interest in the community, and the commissions of the administrator or executor on the community property are fixed to the full extent of that property, and not upon the deceased husband's interest alone. Bertrand's Succession, 123 La. 784, 49 So. 524. The same rule applies in Washington. Ritzville First Nat. Bank v. Cunningham, 72 Wash. 532, 130 P. 1148; Lawrence v. Bellingham Bay, etc., Co., 4 Wash. 664, 30 P. 1099. Ryan v. Fergusson, 3 Wash. 356, 28 P. 910. And in Arizona, in administering the estate of a deceased husband, the court properly assumes administration of the whole of the community estate, to determine the amount of debts chargeable against it, and to direct their payment out of community property, including the expenses of administration. La Tourette v. La Tourette, 15 Ariz. 200, 137 P. 426, Ann. Cas. 1915B, 70.

The so-called expectancy of the wife in community property in California appears, therefore, to be fully as valuable and equally as protected as the so-called technical estate of the wives in community property in the other community property states. At only one point might the distinction between an expectancy and a technical estate prove to have important consequences, and that is in the matter of state inheritance taxes. But here, since 1917, in California, even if the wife's interest in half of the community property was not a technical estate, it has at any rate been as free from state inheritance taxes as though it were a technical estate. Stat. 1917, p. 880; Stat. 1921, p. 1500; Stat. 1923, p. 694.

On the death of the wife, before 1923, the whole community property, without administration, belonged to the surviving husband in California, as it does in Nevada (section 2164 Rev. Laws Nev.) and in New Mexico (section 1840, Code N. M. 1915). Since 1923 in California the statute has provided (Civ. Code Cal. § 1401) that, on the death of the wife, one half of the community property belongs to the surviving husband, and the other half goes to him, too, unless the wife makes testamentary disposition thereof to others. This is and has been the law in Idaho. Section 7803, Comp. Stats. Idaho 1919. In Texas, on the death of the wife, one half of the community property belongs to the husband, and the other half goes to him, too, unless she leaves children, in which case her children or their heirs take her half. Section 2469, Rev. Stat. Tex. If the wife in Texas left grandchildren, but no children, the whole community estate in Texas would go to the husband. Cartwright v. Moore, 66 Tex. 55, 1 S. W. 263.

In Arizona (section 1100, Civ. Code Ariz.), Louisiana (sections 915 and 916, Rev. Civ. Code La.), and Washington (section 1342 Rem. Comp. Stats. Wash.), on the death of the wife, one half of the community property belongs to the husband, and the other half is subject to her testamentary disposition, and in the absence thereof goes to certain of her heirs, and in default thereof goes to the husband. As regards the testamentary capacity of the wife over her half of the community property, and as regards the laws of succession to her half, the different community property states vary, as above shown. On the death of the wife, the

husband is now certain of acquiring all the community property only in the states of Nevada and New Mexico; in the other states, including California, he is sure of retaining one-half of the community property, but no more.

3. The government insists that the answer to the third question is found in the decisions of the Supreme Court of California. It is, indeed, upon the basis of those decisions that the treasury has felt itself bound to refuse to citizens of California the relief accorded to the people of the other community property states. The plaintiff answers: First, that the decisions of the Supreme Court of California are so utterly inconsistent that it is impossible to find in them any settled rule of property; second, that in all essential particulars those decisions do confirm to the wife all the interest and estate necessary to a solution of the problem here, and all or more than she has according to the decisions of the courts of last resort of other states.

As to the first proposition, it seems to me that the inconsistency is more apparent than real. It is based upon words used, names given to things, rather than upon the real and substantial dispositions of those things. But, if it be true that the language of the Supreme Court first used in Van Maren v. Johnson, 15 Cal. 308, that "the interest of the wife is a mere expectancy, like the interest which an heir may possess in the property of his ancestor," was intended as a real and substantial definition of her interest, and not a mere form of words, then there is a radical inconsistency, because that court has time and again granted and confirmed to her rights utterly and absolutely different from those of a mere heir at law.

The first case (after the very early cases) relied upon by the government is Fallbrook Irrigation District v. Abila, 106 Cal. 355, 39 P. 794. The point involved there was whether or not, within the meaning of the statute for the formation of irrigation districts, a married woman was the "owner" of land. The court repeats the language of Van Maren v. Johnson, but adds: "Although it is, no doubt, more tangible than the mere expectancy of a general heir." It is significant, also, that the court in that case points out that there are certain kinds of qualified ownership, as bailees, tenants for years, and others, after which comes the real gist of the decision: "On the other hand, when we consider the character and purpose of the Wright Act, and the great importance which attaches under it to the execution of a valid petition, many obvious reasons are suggested why the

said words should not be taken in a limited or qualified sense."

The next is Spreckels v. Spreckels, 116 Cal. 339, 48 P. 228, 36 L. R. A. 497, 58 Am. St. Rep. 170. This case was decided in 1897, after the Legislature had amended section 172 of the Civil Code, which read as follows: "The husband has the management and control of community property, with the like power of disposition (other than testamentary) as he has of his separate estate"—by adding these words: "Provided, however, that he cannot make a gift of such community property or convey the same without a valuable consideration, unless the wife, in writing, consent thereto."

In the decisions, while the court does say that the best definition of the woman's interest is a "mere expectancy," the real judgment is placed upon the ground that the property which had been given away by Mr. Spreckels was acquired before the amendment of 1891. Moreover, as showing the difficulties in the minds of the learned justices, the following extracts may be quoted:

"There is no mode in which community property can be converted into his separate property. As to all the world, except the wife, there was, prior to this amendment, no distinction between the community estate and the separate estate of the husband. * * * The first attempt shown by our reports of that kind is in Godey v. Godey, 39 Cal. 157. In that case it is said that, while no other technical term so well defines the wife's interest as the phrase 'a mere expectancy, * * * it is at the same time * * * so vested in her that (the) husband cannot deprive her of it by his will, nor voluntarily alienate it for the mere purpose of divesting her of her claim to it.' * * * The husband's ownership of one-half of the community estate is in a sense conditional."

Moreover, the doctrine of Spreckels v. Spreckels, in so far as it can be construed to define the wife's interest, has been specifically repudiated by the Supreme Court of the United States, and quite recently, in effect, by the Circuit Court of Appeals of this circuit. In Arnett v. Reade, 220 U. S. 311, 31 S. Ct. 425, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040, there was a dissent by Mr. Justice McKenna, based partly upon the Spreckels Case, but in the main opinion by Mr. Justice Holmes, it is said:

"It is not necessary to go very deeply into the precise nature of the wife's interest during marriage. The discussion has fed the flame of juridical controversy for many years. The notion that the husband is the

true owner is said to represent the tendency of the French customs. 2 Brissaud, Hist. du Droit Franc. 1699, note 1. The notion may have been helped by the subjection of the woman to marital power, 6 Laferriere, Hist. du Droit Franc. 365; Schmidt, Civil Law of Spain and Mexico, arts. 40, 51; and in this country by confusion between the practical effect of the husband's power and its legal ground, if not by mistranslation of ambiguous words like 'dominio.' See United States v. Castillero, 2 Black, 1, 227. However this may be, it is very plain that the wife has a greater interest than the mere possibility of an expectant heir. For it is conceded by the court below, and everywhere, we believe, that in one way or another she has a remedy for an alienation made in fraud of her by her husband. Novisima Recopilacion, book 10, title 4, law 5; Schmidt, Civil Law of Spain and Mexico, art. 51. Garrozi v. Dastas, 204 U. S. 64, 78. We should require more than a reference to Randall v. Krieger, 23 Wall. 137, as to the power of the Legislature over an inchoate right of dower, to make us believe that a law could put an end to her interest without compensation consistently with the Constitution of the United States."

In Wardell v. Blum, 276 F. 228, the Circuit Court of Appeals for this circuit holds that under Arnett v. Reade, the wife's share does not come to her as an heir, irrespective of the provisions of the statute of 1917. The language is as follows:

"It must not be forgotten that the sole question here is one of federal inheritance tax, and, even if the case was not controlled by the California statute of 1917 above referred to, applying to it the rule of law announced by the Supreme Court of the United States in the case of Arnett v. Reade, 220 U. S. 311, 320, 31 S. Ct. 425, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040, the result, it seems to us, must be the same. That court there said: " 'It is very plain that the wife has a greater interest than the mere possibility of an expectant heir.' "

The next case cited in the brief is Estate of Moffitt, 153 Cal. 359, 95 P. 653, 1025, 20 L. R. A. (N. S.) 207. However, the precise question in that case (namely, whether upon the death of the husband, the wife took as an heir so as to subject her to inheritance tax) had been previously determined by the same court in Re Burdick, 112 Cal. 387, 44 P. 734. But In re Burdick was decided specifically upon the statutes as they stood at the time. "The estate of the wife in the community property," says the court, "is a

creature of statute, and is, of course, just what the statute has made it," and the gist is in the following language:

"The Codes are in pari materia and must be construed as one. This plain intent, that the title of the wife to one-half of the community property shall be administered as part of the estate of the husband, added to the continuous and uniform practice of nearly half a century, must place this matter beyond all doubt. The suggestion that the husband takes from the wife her share of the community property upon her death by succession may seem inconsistent with the proposition that during her life she had no estate of any kind in the property; that she had no estate in the community property, vested or contingent, was held by this court, when the law was that upon her death one-half of the community property was inherited by her next of kin. The change was made by amendments which are codified in sections 1401 and 1402, and which merely change the succession. It was competent for the Legislature to provide the mode in which the wife's expectancy should pass to the husband. It might have done this by creating a right by survivorship as an incident to the estate, but it has done this by providing for a succession. Since the wife could not incumber it or contract with reference to it, there can be no essential difference."

The Estate of Moffitt, in effect, did no more than reaffirm the Estate of Burdick. But in regard to these two cases the significant and outstanding fact is that the people of the state of California refused to accept their doctrine as just and fair to the wife. Speaking through the Legislature, they reversed and repudiated that doctrine, by the enactment of a statute to the effect that the wife's share of the community property should not be subject to the inheritance tax. In other words, they said in effect: If In re Burdick and Estate of Moffitt are the result of our statutes, then those statutes do not truly express the real rights of the wife in the community property, and we will change them so that they will speak truly. I can look upon this amendment in no other light than a deliberate choice between the views of the Burdick and Moffitt Cases, and those of the same court in Beard v. Knox, 5 Cal. 256, 63 Am. Dec. 125, where it was declared:

"The husband and wife, during coverture, are jointly seised of the property, with a half interest remaining over to the wife, subject only to the husband's disposal during their joint lives. This is a present, definite,

and certain interest, which becomes absolute at his death."

The next case relied upon by the government is Spreckels v. Spreckels, 172 Cal. 778, 158 P. 537. The real gist of the decision, however, is (1) that if, under the amendment of 1891, Mrs. Spreckels had an immediate right to bring an action to set aside a gift, that right was barred by the statute of limitations; (2) if this right did not accrue until after the death of her husband, she had ratified and confirmed it by the provisions of her will. The language of the opinion, otherwise, was in no way necessary to the decision.

Next the government relies upon Roberts v. Wehmeyer, 191 Cal. 601, 218 P. 22. This is the case which was pending at the time of the motion to revoke the order denying certiorari in Wardell v. Blum. The plaintiff and her husband had acquired certain real property, paying therefor "community funds" accumulated prior to the adoption of an amendment to the Code of 1917, when section 172a was added, reading: "The husband has the management and control of the community real property but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed or incumbered."

The real thing decided in the case was that, before this amendment, the husband had the power to convey property for a valuable consideration without the consent of his wife, and that the amendment could not operate against funds acquired before its enactment. The Supreme Court of California quotes the decision of Judge Rudkin (Blum v. Wardell [D. C.] 270 F. 309), holding unqualifiedly that section 172a recognizes in the wife a "valid, subsisting, vested interest and estate in the community property during the life of the husband," but is constrained to disagree with that part of the decision of the Circuit Court of Appeals in Wardell v. Blum which relied upon Arnett v. Reade. The comment upon Judge Rudkin's opinion is as follows: "We need express no opinion of the decision of the United States District Court, for, as we have already held, section 172a has no application to the property involved in the case at bar."

I feel certain, in view, at least, of the fact that the Supreme Court did not expressly dissent from Judge Rudkin's view, that it truly expresses the intent of the Legislature, as a part of the consistent policy to get away from the mere language of the Supreme Court, and recognize in the wife a real, substantial, vested, and existing interest; for how can it be said that the lawmakers would enact statutes under which the wife takes property, not as an heir, but as survivor, and declaring that no part of that property could be sold, unless she joined in the sale, unless, during the life of her husband, she had an existing interest in the property.

We come now to the cases which the plaintiff contends are in conflict with those cited by the government. The language of Beard v. Knox, supra, is as follows:

"The words, 'with absolute power to dispose of,' ought not to be extended to a disposition by devise. The husband and wife, during coverture, are jointly seised of the property, with a half interest remaining over to the wife, subject only to the husband's disposal during their joint lives. This is a present, definite, and certain interest, which becomes absolute at his death, so that a disposition by devise, which can only attach after the death of the testator, cannot affect it, for such a conveyance can only operate after death, upon the very happening of which the law of this state determines the estate, and the widow becomes seised of one-half of the property."

Estate of Buchanan, 8 Cal. 507:

"The law of Mexico, in force here until our statute took effect, was the same, so far as relates to the merits of this question. The property belonged to the community, and upon the death of the husband the widow took one-half. The husband had the power of disposition while living, but not by will, which could only take effect after his death. Schmidt's Civil Law of Spain and Mexico, 12, 14, arts. 43, 44, 51, 52; 1 Cal. 513; 5 Cal. 111, 257."

Meyer v. Kinzer, 12 Cal. 247, 73 Am. Dec. 538: .

"These provisions of the statute are borrowed from the Spanish law, and there is hardly any analogy between them and the doctrines of the common law in respect to the rights of property consequent upon marriage. The statute proceeds upon the theory that the marriage, in respect to property acquired during its existence, is a community of which each spouse is a member, equally contributing by his or her industry to its prosperity, and possessing an equal right to succeed to the property after dissolution, in case of surviving the other. To the community all acquisitions by either, whether made jointly or separately, belong. No form of transfer or mere intent of par-

ties can overcome this positive rule of law. All property is common property, except that owned previous to marriage or subsequently acquired in a particular way. The presumption, therefore, attending the possession of property by either, is that it belongs to the community; exceptions to the rule must be proved."

Smith v. Smith, 12 Cal. 225, 73 Am. Dec. 533:

"In Beard v. Knox, 5 Cal. 252, this court held that the common property could not be disposed of by the husband by will, so as to defeat the rights of the surviving wife; and the same doctrine is maintained in the Matter of Buchanan's Estate, 8 Cal. 507. In the first case, the court said: 'Our statute has done away with the common-law right of dower, and substituted in its place a half interest in the common property. This liberal provision was intended for the benefit of the wife, and the intention of so humane and beneficent a law should not be defeated, by adopting a rule of construction which would leave the future maintenance of herself and family entirely at the caprice of the husband.' "

In Scott v. Ward, 13 Cal. 469, the language quoted above from Beard v. Knox is repeated. In Payne v. Payne, 18 Cal. 301, Mr. Justice Field, who wrote the decision in Van Maren v. Johnson, has this to say about Beard v. Knox:

" 'The deceased,' said the court, 'had no authority to dispose of but one-half of the property; this he might do to whomsoever he pleased.' That case was decided in July, 1855, and the decision has never been questioned. It has furnished a rule under which property of vast amount and value has been distributed. We have no doubt of its correctness, and we only affirm and follow it in holding, as we do in the present case, that the plaintiff took one undivided half of the common property in her own right by virtue of the community existing between herself and husband, and that the remaining half was subject to his testamentary disposition."

So Morrison v. Bowman, 29 Cal. 348, quotes with approval the language in Payne v. Payne, and repeated from Beard v. Knox. In Peck v. Brummagin, 31 Cal. 446, 89 Am. Dec. 195, the Supreme Court gives its views of the rationale of Smith v. Smith in the following language:

"The statute confers upon him the like absolute power of disposition of the common property as of his own separate estate; but there is this necessary restriction upon his power: That he cannot make a voluntary disposition with the view of defrauding or defeating the claims of the wife, as was held in Smith v. Smith, 12 Cal. 216. This springs from the relation of the parties and their title to the property, both spouses being jointly entitled to the property, though the husband has the entire management and control of it, and can pass the title in his name alone."

In Galland v. Galland, 38 Cal. 265, in holding that the wife had the right to compel support from the community property, when she had been driven from the home, the court declared that the wife had "a joint and equal interest with the husband in all property acquired during the marriage." In De Godey v. Godey, 39 Cal. 157, it is said:

"It [community property] accrued to her, as having been acquired in part by her own efforts, before the decree of divorce was rendered; that decree as rendered did not deprive her of it. The effect of the decree, acting upon her personal status, was to remove from her the disability, theretofore, as we have said, almost total, to sue concerning it, or to interfere in any wise in its control. Under the operation of that decree, too, the appellant, ceasing to be 'husband,' was no longer the head of the community, which had itself ceased to exist, and, as a consequence, he lost the exclusive control and the somewhat absolute power to dispose of the community property; thenceforth the parties stood upon equal grounds in that respect, and neither could wholly exclude the other from a participation in the property and its present disposition."

The next case, Estate of Silvey, 42 Cal. 210, was the first of a long line of cases holding that, upon the death of the husband, the wife was entitled to one-half, as survivor of the community. The court said:

"There is nothing, however, in the language of the will which evinces an intention on the part of Silvey to dispose of the entire estate. The devise must be read as applying only to that moiety which was within his testamentary power. A purpose to attempt the disposition, by will, of property which, by statute, would pass to the wife, as survivor of the matrimonial community immediately upon his death, is not to be readily inferred, especially where, as here, the words employed by the testator may have their fair and natural import, by applying them only to that moiety of which he had by law the testamentary disposition. I am of opinion that the case of Beard v. Knox, 5 Cal. 252, is, upon all the points involved, decisive of this

case. The general question in that case, as here, concerned the effect upon the right of the surviving wife of a devise by the husband of the community estate."

This was followed along the same line by King v. La Grange, 50 Cal. 330, Estate of Frey, 52 Cal. 661, Estate of Gwin, 77 Cal. 313, 19 P. 527, In re Gilmore, 81 Cal. 240, 22 P. 655, In re Smith, 108 Cal. 115, 40 P. 1037, Estate of Wickersham, 138 Cal. 355, 70 P. 1076, 71 P. 437, Estate of Prager, 166 Cal. 453, 137 P. 37, and Estate of Rossi, 169 Cal. 149, 146 P. 430, in all of which the principle that the wife takes as survivor of the community is reiterated. In the Estate of Brix (1919) 181 Cal. 667, 186 P. 135, many of the rights of the wife are enumerated in the following language:

"Turning, now, to the facts of the case, appellant claims that the only consideration received by the decedent for the transfer in question was a waiver by his wife of all her interest in the community property, and that this is not an adequate consideration, calling our attention in this connection to Spreckels v. Spreckels, 172 Cal. 775, 158 P. 537, and Dargie v. Patterson, 176 Cal. 714, 169 P. 360, and other earlier cases, holding that the title to the community property is in the husband, and that the wife has, during coverture, no more than a mere expectancy like that of an heir. This rule is not determinative of the present case. While the wife has no title to the community property, nor estate or interest therein, yet she has rights in relation thereto, the surrender of which 'may constitute a valuable and, according to the circumstances of the case, an adequate consideration for the transfer. She has a 'possible interest in whatever remains upon the dissolution of the community otherwise than by her own death.' In re Burdick, 112 Cal. 393, 44 P. 735. Upon the death of the husband she takes one-half of the community property, and upon a divorce she may, in a proper case, be awarded even the whole of it. Civ. Code, §§ 146, 1402. If a divorce is granted without any disposition of the community property, the former wife becomes the owner of one-half of the community property as tenant in common with her former husband. De Godey v. De Godey, 39 Cal. 157; Biggi v. Biggi, 98 Cal. 35, 35 Am. St. Rep. 141, 32 P. 803; Hirschner v. Dietrich, 110 Cal. 502, 42 P. 1064. If the husband makes a gift of community property without the wife's consent, she may upon his death recover from the donee one-half of the property so given. Civ. Code, § 172; Dargie v. Patterson, supra. The fact

that she may thus attack a conveyance by the husband made without her consent, on the ground that it was a gift, has a practical application that renders it a great disadvantage to a husband not in cordial relations with his wife. It has become the universal custom with purchasers of real property to insist on her signature to all contracts relating thereto. The custom is so general that it is a matter of common knowledge, of which the court may take judicial notice. 16 Cyc. 873; Irwin v. Phillips, 5 Cal. 146, 63 Am. Dec. 113; Goldsmith v. Sawyer, 46 Cal. 212; Storrs v. Los Angeles Traction Co., 134 Cal. 94, 66 P. 72; Grogan v. Chaffee, 156 Cal. 611, 27 L. R. A. (N. S.) 395, 105 P. 745. In the actual dealings of the husband in community real estate, this gives her a practical control or power of interference which may be a great burden to him. Where a husband and wife are not in accord, but live in strained relations, as was the case here, the adjustment of their relationship as to property, so that this power of the wife to control, object, or interfere is taken away, may be a consideration of very great pecuniary value to the husband and fully adequate for a transfer of valuable real estate."

In Schneider v. Schneider, 183 Cal. 335, 191 P. 533, 11 A. L. R. 1386, the parties had lived together as man and wife, in the innocent belief that they were married. In a divorce action, however, it developed that the marriage was void. The question arose as to whether or not the putative wife was entitled to half of the property accumulated during this relation. In holding that she was so entitled, the Supreme Court said:

"In California, as in Texas, the common law is the general rule of decision, but in both states the law regulating the mutual property rights of married persons is radically different from that law; and while we do not wish to be understood as saying that the rules of the common law as to husband and wife apply to no case under our system, yet we agree with the Texas courts that the common-law rule as to the consequences of a void marriage upon the mutual property rights of the parties to it is inapplicable where the community property régime prevails. This conclusion is dictated by simple justice, for where persons domiciled in such a jurisdiction, believing themselves to be lawfully married to each other, acquire property as the result of their joint efforts, they have impliedly adopted, as is said in the Texas case cited, the rule of an equal division of their acquisitions, and the expecta-

tion of such a division should not be defeated in the case of innocent persons."

Finally, the case of Taylor v. Taylor, 192 .Cal. 71, 218 P. 756, was decided one day after the petition for rehearing in Roberts v. Wehmeyer was denied. In the Taylor Case, a decree of divorce between the parties had been rendered in Nevada, without specifically disposing of the community property. The Supreme Court held that the wife, under such circumstances, was "the owner of one-half of such property as tenant in common with respondent," citing Estate of Brix, supra.

[1] 4. The discussion of these cases will perhaps answer the government's contention that this court is bound by the decisions of the Supreme Court of California. But, in addition to that, the following considerations occur:

(a) This court is considering the effect of a federal statute. It is not, of course, contended that the real question—that is, whether the wife has such an interest in community income as to make it separately taxable—has ever been before the Supreme Court of this state.

(b) If the decisions in California, taken all together, have not clearly determined the question, this court is not bound.

(c) If the Supreme Court of the United States and the Circuit Court of Appeals in a California case have passed upon the question, then this court is bound by their decisions, even if they conflict with the decisions of the state courts.

[2] The tax here is a tax upon income. By the statute law of California, whatever is earned by both husband and wife, as well as the products of community property, become a part of the community. Generally that income is produced by the industry, and professional, economic, or commercial acumen of the husband; generally, but not always. In an increasing number of cases, the wife in fact, by her labor and ability, adds materially thereto. But in the ordinary case, where the wife's contribution is the conduct of the household, and the care of her children, it can be said that in every practical sense she is contributing to the earnings of the husband. It will not do to say that she has no interest in those earnings until her husband dies, or she is divorced. It is probable that a large part of the advancement in the useful arts, and the creation of wealth, is due to the natural ambition of the wife. It is the marriage which creates the ownership; death or divorce merely give possession. Her interest is not

5 F.(2d)—45

merely in support for herself and her children. It is in the fact that her security is fortified by the creation of a fund, which in any contingency shall be available to her. To tax the income, as if it all belonged to the husband, is to unduly diminish that fund; it is in effect, and in practical consequence, to compel the wife to pay an additional tax upon her just share, and to tax her portion under the disguise of a levy upon her husband. In practical effect, likewise, if her husband has separate estate, the whole community income is added to his separate income, and the surtax upon the sum of the two further depletes the community accumulations. If the wife actually earns money, she is obliged to add that to her husband's income, either earnings or the product of his separate estate, and thus pay surtax on the combination. It seems to me that the whole income can be taxed to the husband only if it is that husband's income, to apply the distinction, as the Supreme Court said in Eisner v. Macomber, 252 U. S. 206, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, "according to truth and substance, without regard to form." And the truth and substance is that only one-half of the income really belongs to the husband; the other half, in law and right and justice to the wife.

Let the plaintiffs have judgment as prayed.